## CRAMER v. MARSH.

1. APPELLATE PRACTICE.

In order that the appellate court pass on the question of fraud, it is essential that the record disclose all the testimony on the subject, and if it be excluded the offer of proof must be sufficiently broad to indicate the extent to which it would have gone.

2. PLEDGE—TITLE OF PLEDGES.

A pledgee is not the absolute owner of the pledged property, but he has a special title and property therein which is limited to what is necessary to accomplish the purposes for which it is pledged.

3. PLEDGEE'S RIGHT OF ACTION.

Wherever there is an interference with pledged property, the pledgee has his action against the trespasser for his damages.

4. MEASURE OF DAMAGES.

In an action in the nature of trover by the pledgee of goods against one who is a mere wrongdoer, he is entitled to recover the value of the articles pledged, regardless of his special interest; but when the same is seized by the owner, or by one who claims in his right, the pledgee's recovery is limited to the value of his interest in the goods. An officer seizing the pledge under a writ of attachment against the pledgor stands in the same position with reference to his seizure as the owner would have done had he been guilty of the same act.

*Appeal from the District Court of Arapahoe County.*

THIS litigation sprung from the insolvency of B. P. Brasher in 1886.   Brasher did a wholesale liquor business in Denver under the name of B. P. Brasher & Company.   His operations were extensive and he bought very considerable amounts of stock, which remained unsold at the time of the transaction involved in this suit.   Prior to his coming here he had evidently been in business elsewhere, and contracted to other parties than those who were the immediate creditors of his concern in Denver a large indebtedness.   Among those whom he owed were two women,—Harriet A. Howard and Alexina M. Smith,—the first being his aunt, and the latter his mother-in-law.   Brasher owed these two persons upwards of eight thousand dollars, which had been long due.   About the time of his failure, he attempted to protect them by transferring to the appellee, Marsh, some of his stock, which was stored with some warehousemen.   To carry out his design he executed and delivered the following pledge :

"DENVER, December 6, 1886.

"I, B. P. Brasher, trading under the firm name of B. P. Brasher & Co., do hereby assign the within warehouse receipt, and the goods, wares and merchandise named therein, to Lucius P. Marsh, in pledge and as security for the payment of my indebtedness to Harriet A. Howard, amounting to about $4,500, and my indebtedness to Alexina M. Smith, amounting to about the sum of $3,300, and which claims are severally in the hands of said Marsh for collection.

·"B. P. BRASHER & Co."

"I accept the pledge and security named above.

"Lucius P. Marsh."

"We hold the goods named within subject to the order of Lucius P. Marsh under the above assignment.

"Graham, Webber & Hill."

After the execution of this security and the delivery of the goods through the indorsement and transfer of the warehouse receipt, Marsh proceeded to dispose of the merchandise and apply the proceeds to the liquidation of the indebtedness. About the same time, to still further secure and pay these parties, Brasher transferred to H. W. Smith, who was Alexina's husband, divers notes which he had received in the usual course of his business. These notes were made by different parties and amounted to about five thousand dollars. After all this had been done, and Marsh, the trustee, had collected several thousand dollars and remitted it to the creditors, and those persons had also received the notes, the Kansas City Distilling Company brought an attachment suit against Brasher to recover the price of some liquors, which were possibly included in what was transferred to Marsh. The latter fact is not quite evident. When the attachment writ was given to the sheriff, he executed it by seizing the unsold goods which were covered by the pledge, and which were still in the possession of the warehousemen. The seizure was made in March, 1887. Shortly afterwards Marsh brought this suit, which is analogous to trover at the common law, to recover the damages resulting from the seizure and the conversion by the sheriff. As plaintiff, Marsh alleged the indebtedness which Brasher owed to Mrs. Smith and Mrs. Howard, its nonpayment, the transfer of the warehouse receipts in pledge and as security for its payment, that the indebtedness was due and unpaid, and the merchandise covered by the warehouse receipt insufficient to pay the debts. The sheriff took issue on these allegations. As was evidently necessary, Marsh offered evidence tending to establish the indebtedness of Brasher to Howard and Smith, the extent of his collections

and payments, and, as a conclusion, the amount which would remain due from the debtor to his creditors, and the value of the goods which had been transferred. If he proved that the pledge was inadequate to pay the debts, it would establish his right as pledgee to hold and sell the goods and apply the proceeds. During the progress of the trial, and on the examination of some of the plaintiff's witnesses, evidence was developed which tended to prove that at about the time of the execution of the pledge, Brasher had transferred for the benefit of these creditors the notes referred to, and that those notes had been liquidated and applied by these particular creditors to the satisfaction of their claim. There was evidence in the case which, if believed by the jury, would tend to show that at the time of the seizure by the sheriff, a very large proportion, if not all the claims of these two creditors, had been satisfied, and that thereby the object of the pledge had been accomplished and the trustee no longer had any claim to hold goods for the benefit of those persons, who, by the payments, had ceased to be creditors at the time of the levy. There was evidently a good deal of testimony offered touching the character of Brasher's failure, and tending to impeach its fairness and establish its fraudulent character, as well as some proof tending to bring home to these creditors knowledge of its dishonesty. Some of the evidence which was offered was refused, but the record, as printed in the abstract, is not sufficiently full or definite to call upon us to examine this question or express an opinion about it. When the trial was concluded, the court was requested to instruct the jury concerning the legal effect of the payments which had been made. Substantially, he was asked to instruct the jury if they found from the evidence that at the time of the seizure of the goods these claims had been paid, or had been partially discharged, in the one case their verdict must be for the defendant, and in the other their verdict must be only for so much of the value of the goods as would be sufficient to satisfy the outstanding and unsatisfied portion of the creditors' claims. The court refused to

give either instruction, or any on the subject, and in general charged them that if at the time of the pledge, in December, 1886, there was any indebtedness between Brasher and these two creditors, Marsh, by virtue of the transfer of the warehouse receipts, became the owner of the goods, and was entitled to a verdict for their entire value, regardless of the condition of the accounts between the parties at the time the sheriff took the goods. The questions thus raised are properly saved and presented. The jury rendered a verdict in favor of the trustee for the value of the goods, and the sheriff prosecutes the appeal.

Messrs. WOLCOTT & VAILE and Mr. WILLIAM W. FIELD, for appellant.

Mr. V. D. MARKHAM and Mr. HENRY CARR, for appellee.

BISSELL, P. J., delivered the opinion of the court.

This matter has been in litigation ever since Brasher's failure, in 1886. The present suit was tried once before, and from the judgment in that case the trustee, Marsh, prosecuted an appeal to the supreme court, which is reported in the 16 Colo. 331. An analogous transaction gave rise to another suit, which was brought to this court, and is found in the 2 Colo. App. 324. These two decisions seem to be very much relied on by the counsel for the appellee in his argument. As we read those two cases, neither of them touch upon or decide what in the present opinion is made the pivotal question. The decision of the supreme court in the 16 Colo., supra, turns almost exclusively upon a consideration of the question of fraud in the failure, coupled with the knowledge of the creditors concerning the nature and character of the transaction. The judgment in that case was reversed for the errors which the court committed in instructing the jury concerning sundry sales of the goods pledged, which had been made by Brasher, and respecting what was alleged to be the

fraudulent character of the entire transaction. The court very properly held the jury were entitled to be informed concerning the law which would be applicable in cases of that description, and the failure of the court to instruct them on these subjects necessitated a new trial of the case. There is nothing, however, in the statement of facts preceding the opinion, and nothing in the opinion itself, respecting the question which has been foreshadowed by the statement in this, and the opinion does not help us in this particular. It is conceded the present appellant attempts to question the character of the transaction. We do not, however, find enough in this record to call for any expression on this subject. Those two decisions will serve to guide the judge who may ultimately retry the case. To entitle an appellant to insist that the court shall pass on such questions, it is essential that the record disclose all the testimony on the subject, and, if it be excluded, the offer of proof must be sufficiently broad to indicate the extent to which the testimony would have gone if the court had ruled with him. In our judgment the present record does not rise to this level, and we are therefore relieved from the labor of stating what the law might be upon some case not disclosed. The case in the 2 Colo. App. practically turns on the same question, and the discussion of the court is limited to the same subject-matter. It is true the learned judge writing the opinion states in a general way the law concerning warehouse receipts, and the rights of pledgor and pledgee in cases of transfer; but even a casual examination of the opinion will disclose the fact that the nature of the transfer in the present case and the title which the pledgee took and the measure of his damages when he brought an action for the conversion of the goods, was not in the contemplation of the court when the case was decided.

Enough has been stated to show that in a resolution of the present inquiry these two antecedent decisions give us no aid. The character of the instrument which formed the basis of the present suit was fully recognized by the pleader in drafting his complaint. It is therein designated as a pledge, and

the pleader generally alleges its execution and transfer to Marsh, as trustee, as security for the payment of the debts of the *cestuis que trust*, the nonpayment of the indebtedness, the conversion of the goods, and the consequent damage. The true nature and character of a pledge has been long established, and aside from any special limitations or conditions contained in the contract, the rights and the title of the pledgee are almost universally agreed upon by all text writers and in all precedents. The present litigation does not call for any statement of the differences between a mortgage and a sale and a pledge, but it is enough to recognize the declared law to be that the pledgee is never treated as an absolute owner, but as one having a special title and a special property, which may, with sufficient accuracy for the present determination, be stated to be limited to what is necessary to accomplish the purposes for which the property was put in pledge. Jones on Pledges, secs. 4 and 11, *et seq.; Cortelyou v. Lansing*, 2 Caines Cas., 200; *Robertson v. Wilcox*, 36 Conn. 426.

Whenever there is an interference with the property, the pledgee may have an action against the trespasser to recover his damages. It is unnecessary to determine whether this is true in all cases where the title of the possessor is limited, because it is universally acknowledged that a pledgee may maintain suit to recover for any injury which destroys the value of his contract, or deprives him of his possession and title. Since this is true, it becomes very important to inquire what damages the pledgee may recover when his possession is disturbed and the property taken away from him, under circumstances like those which surround the present transaction. The goods were in the pledgee's possession under a transfer which was sufficient in the law to vest him with a special title and with the right of possession until the purposes of the pledge had been accomplished. When the sheriff took the goods he rendered himself liable to suit at the instance of the pledgee, and must respond in some way and to some extent for the damage which he has occasioned. All

the cases recognize a very wide distinction between the responsibility incurred by a stranger and that which attaches to the owner, or one in privity with or claiming under him.

Wherever an action in trover is brought by the pledgee against one who is a mere wrongdoer, he is always entitled to recover what he can show to be the value of the goods pledged, regardless of his special interest in the property. The rule seems to be based upon the consideration that this result avoids all circuity of action, subjects the wrongdoer to but a single suit for his trespass, and leaves the pledgee to answer over to the pledgor for any surplus which may come into his hands as the result either of a suit or of a sale. But when the property is seized by the owner, or by any one who claims in his right, the pledgee may then only recover the value of his interest in the goods. *Davidson v. Gunsolly,* 1 Mich. 388; *Warner v. Matthews,* 18 Ill. 83; *Russell v. Butterfield,* 21 Wend. 300; *Seaman v. Luce,* 23 Barb. 240; *Burk v. Webb,* 32 Mich. 173; *Levan v. Wilten,* 135 Pa. St. 61; *Sheldon v. Southern Ex. Co.,* 48 Ga. 625; *Chamberlin v. Shaw,* 18 Pick. 278.

It follows that if the conversion had been the act of Brasher, and this suit had been between Marsh and Brasher, Marsh could only have recovered the value of his interest as pledgee, as it existed at the time he brought the suit in March, 1887. The testimony which the plaintiff produced to show the extent of the indebtedness when the pledge was made, and the extent of his collections, would have determined his right of recovery. Had it appeared on the trial that the creditors had received from the pledgor other sums than those which had been turned over by the pledgee, all such payments would have been proper subjects of consideration for the jury to determine the extent of their special interest in the property. It would have been equally competent in such a suit for Brasher to show that the object of the pledge had been otherwise accomplished, if his proof established a satisfaction of the claims. Such evidence would limit the trustee's right of recovery. *Compton v. Jones et al.,* 65 Ind. 117; *Merrifield v.*

*Baker*, 91 Mass. 29 ; *Ward v. Ward*, 37 Mich. 253 ; *Overlock v. Hills*, 8 Me. 383.

It only remains to determine whether Cramer, as a sheriff, in the execution of his process, is a wrongdoer and a tres-passer, against whom the pledgee has a right of action for the total value of the goods, or whether he stands in such rela-tions to the pledgor that Marsh's right of recovery must of necessity be limited to his special interest. Under our stat-utes regulating attachments and providing for their execu-tion upon personal property, it is generally enacted that property capable of manual delivery is the subject of attach-ment, but the writ may only be executed by taking it into custody. There is no provision in our act otherwise provid-ing for effectuating the process by the service of notice on some person who claims a special title to it, and securing the enforcement of the lien at the same time that the rights of the attaching creditor are protected. It would, of course, be true that the sheriff who takes property which has been pledged takes it subject to the rights of the pledgee, and may, if the pledgee has unsatisfied claims, be sued either in replevin or in trover. In the latter case judgment must go against him to the extent of the injury which he has occa-sioned. There is no practical trouble in cases of this descrip-tion, since the attaching creditor will always be called upon by the officer to protect him. There seems, however, to be no other way by which the creditor can avail himself of what-ever interest may be left to the owner in the property pledged. Under these circumstances it would be a very great hardship and a wrong to hold that the sheriff, by his levy, became a wrongdoer, and therefore liable to the pledgee for the total value of the property seized, regardless of the extent of the latter's interest. In a similar case, but whether under a sim-ilar statute does not appear, the Illinois court held the sheriff was not a wrongdoer, but stood in precisely the same position with reference to his seizure the owner would, had he been guilty of the same act. *Baldwin et al. v. Bradley*, 69 Ill. 32.

This discussion demonstrates the error into which the court

below fell in instructing the jury as to the measure of damages. So long as there was evidence in the case which tended to show that the object of the pledge had been wholly or partially accomplished, and the debt secured by the transfer of the receipts had been totally or partially discharged, the jury should have been called on to determine the amount of the original debt, the extent of the payment, and the consequent remaining interest of the pledgee.

There are no other points presented by the record or stated in the argument which call for any discussion or any opinion. For the error which the court committed in failing to instruct the jury concerning the proper measure of damages, this case must be reversed and remanded.

*Reversed.*