Brewer v. Griesheimer.

104   323
d112  1322

## John A. Brewer v. Fred Griesheimer et al.

1. ASSIGNMENT OF WAGES—*To be Earned in a Present Employment.* —One earning wages in a present employment may assign, for a valid consideration, his unearned wages. He has a possibility coupled with an interest, which is assignable, and it makes no difference that he is removable at any time, at the option of his employer.

2. ASSIGNMENTS—*Courts of Equity Will Support.*—Courts of equity will support assignments. not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them.

3. SAME—*Equitable Doctrine Applies to Unearned Wages.*—The equitable doctrine with regard to the assignment of property to be acquired in future, extends to unearned wages. The fund need not be in being; if it exists potentially—that is, if it will in due course of things arise from a contract or arrangement already made or entered into when the order is given, the order will operate as an equitable assignment of such fund as soon as it is acquired, and will create an interest in it which a court of equity will enforce.

4. TRUCK SYSTEM—*Section 3 of the Act Construed.*—Section 3 of the act prohibiting what is known as the truck system does not, either expressly or impliedly, inhibit workmen having existing contracts of employment, from contracting with third persons, in regard to unearned wages, as they might have done prior to its enactment. Therefore it is not evidence of a public policy against the assignment of unearned wages.

5. WORDS AND PHRASES—*Waiver Defined.*—Waiver is the relinquishment of or refusal to accept of a right. Bouvier's Law Dictionary.

Assignment of Wages.—Appeal from the Superior Court of Cook County; the Hon. ALONZO K. VICKERS, Judge presiding. Heard in this court at the March term, 1902. Reversed and remanded with directions. Opinion filed December 11, 1902.

Statement.—This is an appeal from a decree in chancery dismissing appellant's bill against appellees. The bill is filed by J. A. Brewer, "trading as J. A. Brewer & Co." The following facts are found by the master, sustained by the evidence and not controverted by appellant's counsel.

November 17, 1899, defendant, Charles Silverstein, borrowed from John A. Brewer, the complainant, the sum of $100, and thereupon executed to said complainant his promissory note as follows:

"CHICAGO, Ill., Nov. 17, '99.

Apr. 10th, 1900, after date, for value received, I promise to pay to the order of myself one hundred thirty-five & ——————— dollars with interest at 7 per cent per annum after maturity, at 84 Adams St., Chicago. If this note is not paid when due, I agree to pay an attorney's fee of $10, if placed in the hands of an attorney for collection. If this note is not paid when due, and the holder sends a collector to see me in reference to payment of whole or part of same, I agree to pay twenty-five cents for each and every call of said collector.

CHARLES SILVERSTEIN."

The note was indorsed, "Charles Silverstein." "John A. Brewer." Above the signatures of Silverstein and Brewer indorsed on the note, is an indorsement to the effect that the note is payable in weekly installments of $6.75 each, the first installment to be paid November 28, 1899, and the last April 10, 1900.

To secure payment of said note the following agreement was made by the parties:

"This agreement made and entered into this 17th day of November, 1899, by and between J. A. Brewer & Co., of Chicago, Cook county, Illinois, party of the first part, and Charles Silverstein, of Chicago, Cook county, Illinois, party of the second part.

"Witnesseth: That said party of the second part hereby sells, assigns and transfers to said party of the first part for the sum of $135 and other good and valuable consideration, the receipt of which is hereby acknowledged, any and all of his salary, which amounts to $25 per week and becomes due and payable on the 20th of November and on each and every Monday thereafter for the period of one year from the date hereof, or until such time as the sum

first written above has been paid by or for the said party of the second part to said party of the first part.

" Said party of the first part has made and delivered to said party of the second part written authority to collect the said salary, when it shall become due, from Fred Griesheimer, the conditions of said written authority being that said party of the second part shall turn over to said party of the first part the amount of $6.75 on each and every pay day until the amount first written above has been paid to said party of the first part. On the failure of said party of the second part to turn over to said party of the first part said money as provided, the said authority to collect said salary shall become null and void, and all of the money to be paid to said party of the first part shall become due and payable at once, and the said party of the first part shall collect all of the said salary of the party of the second part from the said employers, and shall apply the same to the liquidation of the obligation due from said party of the second part to the said party of the first part, until the total amount collected and retained by said party of the first part shall amount to $135, together with an attorney fee of $10, as liquidated damages, and to cover the expense to said party of the first part in collecting the said salary or wages.

" It is further mutually agreed to, by and between the parties to this contract, that in case the said party of the second part shall at any time before the full amount of $135 has been received by said party of the first part, for any reason leave or discontinue in the employ of said present employers, the assignment of the salary or wages of the said party of the second part shall extend and apply to any and all positions hereafter held or occupied by said party of the second part for a period of ten years from and after this date, and the said party of the first part is hereby authorized to collect the salary of said party of the second part from any and all persons by whom said party of the second part may be employed during said ten years, until the amount collected and retained by the party of the first part shall amount to $135 and attorney fees and interest.

" The said party of the second part hereby instructs his present employers, or any other person, firm, copartnership, company, corporation, organization or official, by whom he may hereafter be employed or from whom he may have any money due, to, on presentation of a copy of this contract, duly verified, any time before the expiration of ten years from the date hereof, pay to the order of the

said party of the first part, for value received, the amount designated as due in the affidavit filed with the verified copy of this contract, with interest at seven per cent per annum from the date hereof, out of any money his due as salary, wages, commissions, or from any other source, or to become due after notice to said debtor of the existence of this contract. The said party of the second part hereby irrevocably waives all exemptions or other rights he may have by reason of any law of any state in which he is now or may hereafter be employed, or live, and orders such payment out of the first money to become his due.

"Said party of the second part further agrees not to collect or attempt to collect any part of any salary, wages, commissions or other money due him from any employer or other person after a written notice of this contract to said employer or other person until amount due said party of the first part, or his assignee or representative, has been paid in full.

"It is further mutually agreed by and between the parties to this contract that when the amount due said party of the first part from said party of the second part, as shown by this contract, has been paid in full, this contract shall become null and void, and of no further effect.

In witness whereof the said parties to this contract have hereunto set their hands and seals on the day and year first above written.

J. A. BREWER & CO.    [SEAL.]
CHAS. SILVERSTEIN.    [SEAL.]

Signed and sealed in presence of

Witness."

(10 c. rev. stamp.)

At the date of the execution of said note and agreement, Silverstein was in the employ of the defendant, Griesheimer, at a salary of $25 per week, payable weekly, and so continued until August, 1900, during all of which time Griesheimer paid him weekly his salary of $25.

Silverstein paid three of the weekly installments of $6.75 each, but made default as to the installment due December 19, 1899.

December 20, 1899, the complainant caused to be served on defendant, Griesheimer, a copy of the above mentioned agreement purporting to assign Silverstein's salary to com-

plainant. Griesheimer ignored the notice, and, as before said, continued paying to Silverstein his weekly salary till August, 1900. He claimed on the hearing before the master that Silverstein was indebted to him in the sum of $65.99, on account of money loaned by him to Silverstein, but it appears from the evidence that the money was lent December 28, 1899, after the service on Griesheimer of the notice above mentioned. The master reported in favor of complainant, and recommended that a decree be entered in his favor for $114.75, but the court dismissed the bill for want of equity.

GUSTAV E. BEERLY, attorney for appellant.

B. M. SHAFFNER, attorney for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

The only question argued by counsel is, whether unearned wages or salary can be legally assigned. The exact question seems to be an open one in this state. Counsel for appellant cites Johnson v. Pace, 78 Ill. 143, in support of the affirmative, but the question was not decided in that case. The facts of the case were as follows: Woodward, the principal of a school, drew an order on the treasurer of the school district, directing the treasurer to pay to Oliver Holmes, July 5, 1899, the sum of $231.25, out of money that might come to the treasurer's hands belonging to Woodward. Woodward owed that sum to Holmes at the date of the order. The order was accepted, by indorsement thereon, by Thomas H. Hobbs, president, and James M. Pace, as officers of the board of education and of the school district, on condition that Woodward would continue to discharge the duties of principal till the termination of his contract, July 1, 1874. Also there was indorsed on the order, over Holmes' signature, authority to Pace to receive the money for Holmes, in accordance with the order. Subsequently two school orders in favor of Woodward, one for the sum of $123 and the other for the sum of $61, were regularly issued, and Pace, as the agent of Holmes, drew

the money on these orders June 13 and June 25, 1874, respectively. June 29, 1874, Pace was garnisheed, in attachment, by Johnson et al., creditors of Woodward. The court say, among other things:

"Nor do we discover here any such violation of duty or improper practice, as school officers, as is claimed by appellants, which should deny to Holmes the benefit of this money. The acceptance by the president and secretary of the board of education of the order drawn by Woodward in favor of Holmes on the town treasurer, to be sure, was out of the line of their duty as school officers, but it was without effect, and merely harmless. It was not by means of this order that the money was obtained from the town treasurer, but there were regularly drawn school orders on the town treasurer, signed by the proper school officers, as authorized by law, in the usual form of school orders for the payment of teachers' salaries, and it was upon these orders that the town treasurer paid the money to Pace. The only significance of the order to Holmes was as between the latter and Woodward, denoting Woodward's purpose that Holmes should have the money."

Silverstein was actually in the employ of the defendant, Griesheimer, at the time he executed the assignment to complainant, under a contract with Griesheimer to pay him $25 per week, payable weekly.

We have carefully examined the following cases, which are to the effect that one employed under such a contract as the one in question may legally assign, for a valid consideration, his unearned wages; that a person having such a contract has a possibility coupled with an interest, which is assignable, and that it makes no difference that he is removable at any time, at the option of his employer. Hawley v. Bristol, 39 Conn. 26; Brackett v. Blake, 7 Metc. 335; Emery v. Lawrence, 8 Cush. 151; Hartley v. Tapley, 2 Gray, 565; Taylor v. Lynch, 5 Gray, 49; Lannan v. Smith, 7 Gray, 150; Boylen v. Leonard, 2 Allen, 407; Darling v. Andrews, 9 Ib. 106; Metcalf v. Kincaid, 87 Ia. 443; Kane v. Clough, 36 Mich. 438; Thayer v. Kelley, 28 Vt. 19; Wade v. Bessey, 76 Me. 413; Field v. City of New York, 6 N. Y. 179; Hax v. Acme Cement Plaster Co., 82 Mo. App. 447; Greene v.

Bartholomew, 34 Ind. 235; Garland v. Harrington, 51 N. H. 409; Payne v. The Mayor, etc., 4 Ala. 333.

In Brackett v. Blake, *supra*, the court, Shaw, C. J., delivering the opinion, say:

" The quarter's salary of the city marshal, which was to become due on the 1st of January, 1842, was a possibility coupled with an interest, and, as such, capable of being assigned. He is chosen for a year; and the fact that he was liable to be removed at the will of the mayor and aldermen, merely made the contract defeasible. But a defeasible or voidable contract is a good ground upon which an interest may be raised until defeated."

In Hartley v. Tapley, *supra*, the assignor of unearned wages worked by the piece and his wages per month varied. The court say:

" The particular fact that the workman was employed to work by the piece does not affect the general fact that he was uninterruptedly in the employ of the defendant, during all the time in question."

In Lannan v. Smith, *supra*, the workman was employed by the day at $1.25 per day. See, also, Kane v. Clough, 36 Mich. p. 440, and Hax v. Acme, etc., Plaster Co., 82 Mo. App., p. 454.

In some of the cases cited the assignment had been assented to by the employers, and this fact is mentioned in the opinions; but such assent is not necessary to the validity of such an assignment. Garland v. Harrington, 51 N. H. 409; Young v. Jones, 180 Ill. 216, 220, citing 2 Am. & Eng. Ency. of Law, 2d Ed., 1059–60.

In Hax v. Acme, etc., Plaster Co., the court say:

" It has been held in Connecticut, Iowa, Maine, Massachusetts, Michigan, New Hampshire, Vermont and Wisconsin, that an assignment of wages, or salary, to be earned under an existing contract of employment, made in good faith and for a valuable consideration, is valid."

In Kane v. Clough, 36 Mich. 437, the contest was between an assignee of wages to be earned and a judgment creditor of the assignor, who had garnisheed the assignor's employers. Cooley, C. J., delivering the opinion of the court, states the case thus:

" On the 16th of October, 1874, Tucker was employed by the defendants, doing piece-work in the manufacture of organs, but without any definite contract for the continuance of the employment. Being then indebted to his mother for money loaned, he executed to her an assignment of all the wages that might thereafter become due to him from the defendants. Between that date and December 9th following, sixty-five dollars and fifty cents had become due to him, which was less than he was then owing to his mother. It is this sum which is now in dispute; the plaintiffs claiming that the assignment could not reach it, because the moneys were not earned when the assignment was made, and there was no subsisting contract under which they were to be earned."

The case seems to have been very thoroughly argued. The learned Chief Justice sustained the assignment, citing some of the cases cited *supra*. The opinion concludes as follows:

" We do not see why a continuous employment at piece-work should differ from any other continuous employment, if in the latter the right to discharge at will exists. The substantial difference in the two cases is not in the continuance of employment, or in the expectation thereof, but in the manner of determining the compensation. Future wages no more exist potentially in the one case than in the other."

In Field v. City of New York, *supra*, the assignee sought his remedy in equity, as does the complainant in the present case. The court upheld the jurisdiction, and say:

" Whatever doubts may have existed heretofore on this subject, the better opinion, I think, now is, that courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them. Authorities may be found which seem to incline the other way, but which, upon examination, will be found to have been overruled, or to have turned upon the question of public policy."

Pomeroy in his work on Equity Jurisprudence, Vol. 3, Sec. 1283, states the doctrine as follows:

" The equitable doctrine with respect to the assignment

of property to be acquired in future, is extended to this species of equitable transfer. The fund need not be actually in being; if it exists potentially—that is, if it will in due course of things arise from a contract or arrangement already made or entered into when the order is given, the order will operate as an equitable assignment of such fund as soon as it is acquired, and will create an interest in it which a court of equity will enforce."

The same author writes that "mere possibilities, or expectancies, which are not embraced within these statutes, are, according to the general course of decision, assignable in equity for a valuable consideration, and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest of possession." Ib., Sec. 1287.

The statutes referred to in the foregoing quotation are statutes permitting the assignment at law of future expectancies and possibilities, coupled with an interest. See Ib., Sec. 1285. See also to the same effect, 2 Story's Eq. Juris., 12th Ed., Sec. 1040; Warren v. First Nat. Bank of Columbus, 149 Ill. 9, 23-24; Young v. Jones, 180 Ib. 216, 220. The assignment is supported by a great weight of authority.

It is unnecessary to pass on the validity of that part of the agreement by which it is purported to be extended for ten years, and to other and future contracts of employment by Silverstein. In Boylen v. Leonard, *supra*, the court say:

" Whether such an assignment must not be held to be under some reasonable limitation of time, it is not important now to consider, inasmuch as the assignment in this case was recently made, less than nine months having elapsed from the time of the execution, when this trustee process was instituted."

Counsel for appellee contends that the assignment by a wage-earner of unearned wages, is contrary to public policy, and refers to the statute in regard to what is known as the truck system, Hurd's Stat. 1901, p. 879, as evidence of such policy. Sections 1 and 2 of that statute were held unconstitutional in Frorer v. The People, 141 Ill. 171. Section 3 is as follows:

" It shall be unlawful for any person, company, corpora-

tion or association employing workmen, in this state, to make deductions from the wages of his, its or their workmen, except for lawful money, checks or drafts actually advanced without discount, and except such sums as may be agreed upon between employer and employe, which may be deducted for hospital or relief fund for sick or injured employes."

Section 5 provides that "all attempts to evade or avoid the provisions of this act, by contract or otherwise, shall be deemed a violation thereof."

Section 6 excludes farm laborers and servants from the provisions of the act.

Although we deem the validity of section 3 doubtful, in view of the opinion in Frorer v. The People, 141 Ill. 171, we have considered the section on the hypothesis that it is valid.

Section 3 is directed against employers. The evident intention and object of the section is to protect workmen against the acts of their employers. It does not, either expressly or impliedly, inhibit workmen having existing contracts of employment, from contracting with third persons, in regard to unearned wages, as they might have done prior to its enactment. Therefore it is not evidence of a public policy against the assignment of unearned wages.

If an employer should pay, on the order or assignment of a workman in his employ, wages unearned, when the order or assignment was made, it could not be successfully contended that the workman could recover from the employer the amount so paid. It would be a complete answer to a suit by the workman for such amount, that the money was paid by his direction.

Recht v. Kelly, 82 Ill. 147, cited by counsel, is not in point. In that case it is decided that a debtor can not, by executory contract, waive his right of exemption of property from execution, for the reason that the exemption is as much for the benefit of the debtor's family as for his benefit. Waiver is the relinquishment of or refusal to accept of a right. Bouvier's Law Dictionary. Silverstein waived nothing. On the contrary, he asserted practically his right to

unearned salary, which might fall due under his contract with Griesheimer, by assigning to appellant part of his interest therein. It does not appear that Silverstein had any family. Exemption laws do not at all relate " to the power to contract in regard to matters of general right." Frorer v. The People, 141 Ill. 171, 185.

A debtor possessed only of property exempt from execution may sell or otherwise dispose of the exempt property.

We have sought in vain for legal ground on which the unearned wages, or salary, of a workman or employe may be protected against his own assignment, fairly and voluntarily made, for a valuable consideration. The law, when properly invoked, is ample to protect one in his rights, but if a person has sufficient mental capacity to attend to ordinary business and act rationally in the ordinary affairs of life, the law is impotent to protect him against the consequences of his own deliberate folly. Appellee's counsel admitted in open court, on the hearing, that if appellant was entitled to anything, he was entitled to the amount found due by the master, namely, $114.75. The decree dismissing the appellant's bill will be reversed and the cause remanded to the Superior Court, with directions to enter a decree in favor of appellant and against appellees for the sum of $114.75 and costs of suit.