[No. 5310.]
[No. 2948 C. A.]

## Chicago, Burlington and Quincy Railroad Company v. Provolt et al.

1. **Assignments—Validity—Future Wages.**

An assignment of wages to be earned in the future is not
void as against public policy, nor is it violative of any provision
of the constitution of the United States, of Colorado, or of any
statute of Colorado.—P. 112.

2. **Practice in Civil Actions—Assignment of Wages—Evidence—
Presumptions and Burden of Proof.**

In an action for assigned wages, assignee is not required to
prove that, at the time of notice of assignment, wages remained
due from defendant to assignor, but, on proof of the amount
earned, the presumption of law is that it remained unpaid; and
payment, set-off, or anything else which might go in reduction
or extinguishment of the claim, is a matter of defense.—P. 113.

3. **Same.**

An assignment recited that assignor sold to assignee, for the
sum of $27.50, any and all his salary, amounting to $75 a month,
for one year, "or until such time as the sum as written above
has been paid"; that the assignor should collect his salary on
condition that he turn over to assignee $27.50 on each day, "until
the amount as written above has been paid"; and that, on failure

so to do, his authority to collect should become void, and as-signee should collect "until the total amount collected and re-tained shall amount to $27.50." It further provided that, on assignor's leaving his then employment "at any time before the full amount of $27.50 has been received," then assignee should have authority for 10 years to collect the salary of assignor from any one by whom employed, "until the amount collected and retained shall amount to $27.50"; and that, when the amount due has been paid in full, the contract shall become null and void. Held, that such assignment was simply security for money loaned, and not an absolute assignment of all the wages of as-signor for the time stated, notwithstanding it purported to be of "any and all salary"; and hence, in an action for the assigned wages, proof of the amount due from assignor to assignee was essential to recovery against the employer.—P. 114.

**4. Contracts—Rules of Construction.**

A contract must be construed as a whole, effect being given to all its parts and provisions when that can be done without working an injustice to either party, and when doubt exists and the contract is susceptible of two constructions, the one working an injustice and the other consistent with the rights of both parties, the one which upholds the rights of the parties should be adopted.—P. 117.

**5. Assignments—Partial Assignment of Wages—Validity.**

A partial assignment of wages not accepted by the employer cannot be enforced against it.—P. 118.

*Appeal from the District Court of the City and County of Denver.*

*Hon. F. T. Johnson, Judge.*

Action by T. S. Provolt and E. J. Cavanaugh, co-partners as The Employes' Credit Company, against the Chicago, Burlington & Quincy Railroad Company. From a judgment for plaintiffs, defend-ant appeals.        *Reversed.*

Messrs. VAILE & WATERMAN, Mr. E. N. CLARK, Mr. W. W. FIELD, and Mr. HENRY MCALLISTER, Jr., for appellant.

Mr. C. K. PHILLIPPS, for appellees.

Mr. Justice Maxwell delivered the opinion of the court:

Appellees were plaintiffs below. They brought suit against appellant to recover wages alleged to be due Corse, Patty and Palmer, employees of appellant, upon separate assignments made by the parties named to appellees.

The Corse assignment is as follows:

"Articles of Agreement, Made and entered into this 23d day of October, A. D. 1900, by and between Employes' Credit Company, E. J. Cavanaugh, Mgr., of Denver, Arapahoe County, Colorado, party of the first part; and F. A. Corse, of Denver, Arapahoe County, Colorado, party of the second part, Witnesseth,

"That said party of the second part hereby sells, assigns and transfers to said party of the first part for the sum of $27.50, and other good and valuable consideration, the receipt of which is hereby acknowledged, any and all of his salary, which amounts to $75.00 per month, and becomes due and payable on the 15th day of each and every month, for the period of one year from the date hereof, or until such time as the sum first written above has been paid by or for said party of the second part to said party of the first part.

"Said party of the first part has made and delivered to said party of the second part written authority to collect the said salary when it shall become due from Chicago, Burlington and Quincy R. R. Co., the conditions of said written authority being that said party of the second part shall turn over to said party of the first part the amount of $27.50 on each and every pay-day until the amount first written above has been paid to said party of the first part. On the failure of said party of the second part to

turn over to said party of the first part said money, as provided, the said authority to collect said salary shall become null and void, and all of the money to be paid to said party of the first part shall become due and payable at once, and the said party of the first part shall collect all of the said salary of the party of the second part from the said employers, and shall apply the same to the liquidation of the obligation due said party of the second part by the said party of the first part, until the total amount collected and retained by said party of the first part shall amount to $27.50, together with an attorney fee of $10.00 as liquidated damages and to cover the expense to said party of the first part in collecting the said salary or wages.

"It is further mutually agreed to by and between the parties to this contract that in case the said party of the second part shall at any time before the full amount of $27.50 has been received by said party of the first part, for any reason leave or discontinue in the employ of said present employers, the assignment of the salary or wages of the said party of the second part shall extend and apply to any and all positions hereafter held or occupied by said party of the second part for a period of ten years from and after this date, and the said party of the first part is hereby authorized to collect the salary of said party of the second part from any and all persons by whom said party of the second part may be employed during said ten years, until the amount collected and retained by the party of the first part shall amount to $27.50 and attorney's fees and interest.

"The said party of the second part hereby instructs his present employers, or any other person, firm or co-partnership, company, corporation, organization or official by whom he may hereafter be employed, or from whom he may have any money due,

to, on presentation of a copy of this contract, duly verified, any time before the expiration of ten years from the date hereof, pay to the order of the said party of the first part, for value received, the amount designated as due in the affidavit, filed with the verified copy of this contract, with interest at 10 per cent. per annum from the date hereof, out of any money his, due as salary, wages, commissions or from any other source, or to become due after notice to said debtor of the existence of this contract. The said party of the second part hereby irrevocably waives all exemptions or other rights he may have by reason of any law of any state in which he is now, or may hereafter be, employed or live, and orders such payment out of the first money to become his due.

"Said party of the second part further agrees not to collect or attempt to collect, any part of any salary, wages, commissions or other money due him from any employer or other person after a written notice of this contract to said employer or other person until amount due said party of the first part, or his assigns or representative, has been paid in full.

"It is further mutually agreed by and between the parties to this contract that when the amount due said party of the first part from said party of the second part, as shown by this contract, has been paid in full, this contract shall become null and void, and of no further effect.

"In Witness Whereof, the said parties to this contract have hereunto set their hands and seals on the day and year first above written.

"(Seal)    EMPLOYES' CREDIT CO.,

"E. J. Cavanaugh, Man'gr.

"F. A. Corse.    (Seal)"

The Patty and Palmer assignments are in force and effect, the same as the Corse assignment, except that in the Patty assignment the consideration is stated at $39.00, and in the Palmer assignment at $26.00, and the monthly salary at $75.00 and $50.00 respectively.

The complaint was in three counts alleging three separate assignments.

The answer, as it finally stood, was a general denial.

Appellees proved the execution of the assignments by the assignors; that assignors were employees of appellant at the dates of the several assignments; the several amounts due from the appellant to each assignor, at the respective dates when assignors quit the service of appellant, as follows: Corse, $42.11; Patty, $27.80, and Palmer, $12.00; and introduced in evidence, over the objection of appellant, the several assignments.

Defendant offered no evidence.

The court instructed the jury to return a verdict in favor of appellees for $79.62, upon which judgment was rendered, from which is this appeal.

Many errors are assigned and urged by appellant, based on rulings on demurrers and motions interposed to the pleadings, the reception and rejection of testimony, the instruction to the jury to find for appellees, and the refusal to instruct as requested by appellant, most of which may be comprehended in this statement found in appellant's brief:

"We contend that these contracts, and each of them, were on their faces illegal, invalid, unenforceable and void, because in violation of law, the constitutions of Colorado, and of the United States, the statutes of Colorado, and because against public policy; and further, because the court below erred in refusing to permit examination of witnesses and

the introduction of evidence tending and intending to disclose and establish the illegality and invalidity of said alleged contracts.''

The argument of counsel for appellant in support of this contention is erudite and forceful, and if time and space permitted, it would be a pleasure to state and review it here.

Since the filing of appellant's brief, the supreme court of Illinois has ruled the questions discussed by counsel under this head, adversely to its contention, and the conclusion arrived at by that court meets with our approval.

In *Mallin v. Wenham et al.*, 209 Ill. 252, 70 N. E. 564, from the statement of facts it appears that Mallin had borrowed from Wenham at usurious rates of interest $342.00 more than he had paid back, and to secure such indebtedness executed and delivered to Wenham the following assignment:

''For a valuable consideration to me in hand paid by C. F. Wenham, the receipt whereof is hereby acknowledged, I do hereby transfer, assign and set over to said C. F. Wenham, his heirs, executors, administrators or assigns, all salary or wages, and claims for salary or wages, due or to become due me from Armour & Co., or from any other person or persons, firm, co-partnership, company, corporation, organization or official by whom I am now or may hereafter become employed, at any time before the expiration of ten years from the date hereof.

''I do hereby constitute, irrevocably, the said C. F. Wenham, his heirs, executors, administrators or assigns, my attorney, in my name to take all legal measures which may be proper or necessary for the complete recovery and employment *(sic)* of the claim hereby assigned, and I hereby authorize, empower and direct the said Armour & Co. or any one by whom I may be employed as above, to pay the said

demand and claim for wages or salary to the said
C. F. Wenham, his executors, administrators or as-
signs, and hereby authorize and empower him or
them to receipt for the same in my name.

"J. H. Mallin.

"Chicago, Ill., third day of June, 1898."

Wenham brought suit in the name of Mallin for
the use of Wenham, against Armour & Co., claiming
the wages of Mallin by virtue of the above assign-
ment, Mallin filed his bill in equity, without offering
to repay the $342.00 or any part thereof, and prayed
that the assignment be declared null and void and that
Wenham be restrained from enforcing the same.

The following questions were presented:
(1) Whether an assignment transferring wages to
be earned in the future under an existing employ-
ment is valid; (2) is such an assignment against pub-
lic policy?

The court said: "In respect to the first proposi-
tion mentioned, the authorities are ample and con-
clusive to the effect that an assignment of wages to
be earned in the future, under an existing employ-
ment, is valid. This precise question has frequently
been passed upon by the courts of the different states
and of England, and, so far as we are advised, the
courts of *dernier ressort* have, without exception,
upheld such contracts, where they have been for a
valuable consideration and untainted with fraud."

Our court of appeals announced the same con-
clusion in *C. F. & I. Co. v. Kidwell,* 20 Colo. App. 8,
12, where Judge Thomson, writing the opinion of the
court, said:

"It is well settled that a person in the employ
of another may make a valid assignment of wages
to be earned during the existence of the employ-
ment."

We again quote from *Mallin v. Wenham, supra:*

"The second proposition urged by appellant is, that the assignment in question is against public policy, and for that reason ought not to be upheld. This question was raised in the case of *Edwards v. Peterson,* 80 Me. 367, and the court there held such an assignment did not contravene public policy, and quoted with approval from the case of *Smith v. Atkins,* 18 Vt. 461, in which case it was said: 'It is argued that such contracts are so much against public policy that they ought not to be supported, but we think they are rather beneficial, and enable the poor man to obtain credit when he could not otherwise do it, and that without detriment to the creditors.' * * * Appellant, in this connection, calls attention to the statutes and exemption laws of this state, and insists that the liberal provisions made by the legislature for the indigent and poorer classes indicate the adoption of a broad and liberal public policy toward the classes named, and that it is the duty of this court to so construe the law that the class and individuals so favored by the statute shall be compelled to accept of its beneficent provisions. Such is not the province of this court. The citizens of the state have a right to contract, and there is no law forbidding one from selling or assigning any property he may have. A person has the same right to assign his wages that he has to mortgage his homestead or to mortgage personal property that is exempt from execution. The statute provides liberal exemptions, of which a person has the right to avail himself if he so desires; but, if he does not, the courts are powerless to help him. The duty of the courts in instances of this kind is well laid down in the case of *Carroll v. City of East St. Louis,* 67 Ill. 568: 'It is the legislative and not the judicial power in the state that must control and give shape to its public policy.

That power does not pertain to the courts. They can only observe that policy and apply it to cases as they arise, without changing or obstructing it.' * * * We also indorse the doctrine laid down in Greenhood on Public Policy (pp. 116, 117), as follows: 'The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. Before a court should determine a transaction which has been entered into in good faith, stipulating for nothing that is *malum in se,* to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial—not theoretical or problematical. He is the safest magistrate who is more watchful over the rights of the individual than over the convenience of the public, as that is the best government which guards more vigilantly the freedom of the subject than the rights of the state.' * * * We cannot see that there is anything intrinsically vicious in an assignment of wages. The assignor, in such case, simply draws upon his future prospects to supply present needs, which may be of the most urgent and pressing character. There is no law in this state to prevent a poor person from mortgaging or pledging any or every article of property he possesses as security for his debts, and such a privilege may be of great value. On the whole, we see no reason or right for holding the assignment in question here void as against public policy.''

The reasoning of the above case and the authorities therein cited, convince us that there is no warrant in law for holding the assignments here under consideration void as against public policy, nor are they in any respect violative of any provision of the

constitution of the United States or of this state, or any of the statutes of this state.

In *Brewer v. Griesheimer,* 104 Ill. App. 323, the court had under consideration an assignment almost identical in terms with the assignments in the case at bar, and at page 333 it was said:

"We have sought in vain for legal ground on which the unearned wages, or salary, of a workman or employee may be protected against his own assignment, fairly and voluntarily made, for a valuable consideration. The law, when properly invoked, is ample to protect one in his rights, but if a person has sufficient mental capacity to attend to ordinary business and act rationally in the ordinary affairs of life, the law is impotent to protect him against the consequences of his own deliberate folly."

Appellant further contends that appellees should not have had judgment, for the reason that they failed to prove that at the time of the service upon appellant of notice of the assignments, any sums remained due from appellant to the several assignors.

Appellees meet this contention by saying that the answer being a general denial, the issue of payment was not raised thereby, and that payment being a special defense, should have been pleaded and proved.

*D. & R. G. R. R. Co. v. Wilson,* 4 Colo. App. 355, was a suit against the railroad company to recover assigned wages. The appellant contended that plaintiff was required to prove that the wages had not been paid or otherwise extinguished. Judge Thomson, writing the opinion, said upon this point:

"We cannot assent to this proposition. We think the effect of the assignment was to transfer to the plaintiff wages of the assignors for the time mentioned. Upon proof of the amount earned by each, the presumption of law is that it remained due and

unpaid; and payment, set-off, or anything else which might go in reduction or extinguishment of the claims, was matter of defense.''

The foregoing case is decisive of this question, contrary to the contention of appellant.

*Wabash R. R. Co. v. Papin*, 119 Ill. App. 99, is cited in support of appellant's contention.

There is nothing in the statement of facts or the opinion of the court in the case cited, to indicate the issue presented by the pleadings, and we are not disposed to follow the rule there announced, especially as the same is contrary to the rulings of our court of appeals.

It is further contended by appellant, that: The assignments were made merely as security for money loaned; they were by their terms limited in their operation to the reimbursement of plaintiffs the amount of such loan; and that the assignments were partial.

The language of the assignments supports the contention that the assignments were made merely as security for the money loaned. In effect it is, that the assignor sold, assigned and transferred to appellees "for the sum of $27.50" any and all his salary, amounting to $75.00 per month for the term of one year, "*or until such time as the sum as written above, has been paid*"; authority is given the assignor to collect his monthly salary upon condition that he shall turn over to appellees "*the amount of $27.50 on each and every pay-day until the amount as written above has been paid*," and upon failure of assignor to turn over to appellee "*said money as provided*," his authority to collect shall become null and void, and assignee shall collect "*until the total amount collected and retained by said party of the first part shall amount to $27.50, together with an attorney fee of $10.00*"; in the event assignor leaves his present

employment *"at any time before the full amount of
$27.50 has been received by said party of the first
part,"* then the party of the first part has authority,
for a period of ten years, to collect the salary of
assignor from any and all persons by whom he may
be employed *"until the amount collected and retained
by the party of the first part shall amount to $27.50
and attorney's fees and interest."*

The last clause of the assignment is, *"It is fur-
ther mutually agreed by and between the parties to
this contract that when the amount due said party of
the first part from said party of the second part, as
shown by this contract, has been paid in full, this con-
tract shall become null and void, and of no further
effect."*

The language above quoted and italicized clearly
indicates that the assignments were executed as
security for money loaned, and testimony introduced
by appellees was to the same effect.

By the express terms of the assignments they
became null and void when the amount of the secured
debt was paid by the assignors, and it is clear that
the indebtedness secured is the consideration ex-
pressed in each assignment.

The latter proposition is established by the use
of the words, "sum as written above" and equiva-
lent expressions found in the assignments, which
expressions could only refer to the consideration
stated.

This being true, it follows that appellees should
have proved the amount due from each assignor,
otherwise the judgment rendered afforded appellant
no protection against subsequent claims of assignors,
for any excess there might have been over and above
the amounts due appellees from the assignors.

The record in this case shows that the Corse
assignment was dated October 23, 1900; notice there-

of was served upon appellant May 18, 1901, between which dates seven pay-days intervened.

If any presumption may be indulged, based upon the terms of the assignment, it is to the effect that payment of the indebtedness secured thereby had been made long prior to the service of the notice and that the assignment was thereby rendered null and void.

There is no evidence in the record as to the amount due from Corse to appellees.

The evidence shows that $42.11 was due Corse as wages. The indebtedness secured by the Corse assignment was $27.50.

The jury were instructed to return a verdict in an amount which must have included the whole amount due from appellant to Corse.

In *Mallin v. Wenham, supra,* the court held the assignment a lien upon the wages of the assignor dischargeable by payment. We quote from page 257: "The assignment of appellant's wages was simply a lien on the same so long as he remained in the employ of Armour & Co., and until the indebtedness secured thereby was satisfied."

*Cramer v. Marsh,* 5 Colo. App. 302, was an action by the pledgee of personal property against the sheriff for seizure of the pledged property under a writ of attachment. There was evidence in the case showing that the amount of the indebtedness due appellee upon the assignment relied upon had been fully paid, and the court below was requested to instruct the jury that if they found from the evidence that at the time of the seizure under the writ the claim secured by the assignment had been paid, then their verdict must be for defendant, otherwise such verdict must be for such amount as would be sufficient to satisfy the unpaid and outstanding portion of the claim. The trial court refused this instruc-

tion. The court of appeals reversed this action, holding:

"When the property is seized by the owner, or by any one who claims in his right, the pledgee may then only recover the value of his interest in the goods."

In *Stevenson v. Lord,* 15 Colo. 131, 133, it is said:

"That the mortgagee is entitled to maintain replevin for the property mortgaged, where it is seized under a prior invalid mortgage, provided any portion of the debt secured by plaintiff's incumbrance remains unpaid."

We think the principle announced in the last two cases cited is peculiarly applicable to the facts of the case here under consideration.

Our conclusion is that the assignments relied upon in this case were simply liens and security for money loaned; that proof of the amount due from the assignors to appellees was essential to a recovery against appellant, and that the court erred in instructing the jury to find a verdict in favor of appellees, in the absence of such evidence.

In arriving at this conclusion, the fact that the assignments purport to be of "any and all salary" of assignors, is not lost sight of.

Familiar rules applicable to the construction of contracts are, that a contract must be construed as a whole, effect being given to all its parts and provisions, when that can be done without working an injustice to either party; and when doubt exists, and the instrument is susceptible of two constructions, the one working an injustice and the other consistent with the rights of both parties, the one which upholds the rights of both parties should be adopted.

To hold that the contracts or assignments under consideration are absolute, unconditional and un-

qualified sales and assignments of all the wages of assignors for the periods of time therein stated, seems to be so unjust and inequitable as to preclude its adoption.

The assignments being merely security for loans, as we have determined, the amounts of such loans secured by each assignment as expressed therein, being less than the monthly salary or wages of each assignor, likewise expressed in the assignments, it follows that the assignments were partial and, not having been accepted by the appellant, cannot be enforced against it.—*Welch v. Mayer,* 4 Colo. App. 440; *McMurray v. Marsh,* 12 Colo. App. 95; *Colo. School Co. v. Ponick,* 16 Colo. App. 478; *Home Ins. Co. v. Railroad,* 19 Colo. 46.

For the reasons stated the judgment must be reversed.                                        *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concurring.