## Warren E. Colburn and Fletcher A. Tinkham, Trading as W. E. Colburn & Co., Defendants in Error, v. Commercial Security Company, Plaintiff in Error.

### Gen. No. 16,715.

1. Pledges—*when possession affects right to heir.* Unconditional delivery of pledged property by a pledgee to a pledgor vests in the latter the complete title to such property and continuance of possession is indispensable to the lien; but if the thing pledged is delivered to the pledgor for a special and limited purpose, to be returned later to the pledgee in the same or in a substituted form, the lien of the pledgee will not be lost, and if the pledgor refuses to make the return an action will lie against him for the conversion.

2. Pledges—*when relation of pledgor and pledgee is created.* Where a contract of conditional sale on instalments providing that

the seller may take possession of the article on default is as-signed and delivered by the seller as collateral security for the re-payment of money loaned, the deposit of the contract is a pledge of the proceeds of the article sold and the relation between the seller and the lender is that of pledgor and pledgee.

3. PLEDGES—*when lien is not lost by redelivery.* Where contract of conditional sale on instalments, providing that the seller may take possession of the article on default, is assigned and delivered as collateral security by the seller to a person loaning him money under a contract permitting the seller to reclaim and resell the article on default under the instalment contract, and to deliver the new contract of sale to the lender in lieu of the forfeited con-tract, the lien created by the pledge of the original instalment con-tract is not lost by the lender permitting the reclamation and resale of the article sold.

4. TROVER—*when pledgee may maintain trover against the third party.* Where a contract of conditional sale on instalments pro-viding that the seller may take possession of the article on de-fault is assigned and delivered by the seller as collateral security to one lending him money under a contract permitting the seller to reclaim and resell the article on a default under the instal-ment contract, and to deliver the new contract of sale to the lender in lieu of the forfeited contract, and the seller reclaims and resells the article and delivers the new contract to a third person having knowledge of the original lender's rights, as security under a simi-lar loan agreement, the proceeds from the contract have a potential existence, the third person is not an innocent purchaser, and the original lender may maintain trover against the third person for the value of the new sale contract.

Error to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court, at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

KRUSE & PEDEN and R. C. MERRICK, for plaintiff in error.

MATTHEWS & KIMBELL, for defendants in error.

MR. JUSTICE FITCH delivered the opinion of the court.

By this writ of error it is sought to reverse a judg-ment of the Municipal Court for $255, entered against plaintiff in error, hereinafter called the defendant, in an action of the fourth class. The suit originally was

512    APPELLATE COURTS OF ILLINOIS.

Colburn et al. v. Commercial Security Co., 172 Ill. App. 510.

brought in replevin by the defendants in error, W. E. Colburn & Co., otherwise known as the Merchants Exchange Bank, hereinafter called plaintiffs, but no property being turned over upon the replevin writ, the case proceeded in trover. The evidence tended to show that one Charles F. Dickinson was engaged in the business of selling pianos upon the installment plan. With each sale he took a signed instrument, the first paragraph of which is in the form of a promissory note, for the price of the piano, payable to the order of Dickinson, in monthly installments with interest, to which is appended an agreement to the effect that the piano is temporarily let to the subscriber, but that the title remains in Dickinson until the purchase price is fully paid, and that if at any time before that, Dickinson shall feel himself insecure or unsafe, or if default shall be made in the payment of any of the installments, he shall have the right to take possession of the piano, in which event all sums paid thereon shall be forfeited as liquidated damages. In May, 1907, Dickinson and the plaintiffs entered into a written agreement, by which the plaintiffs agreed to loan him as required from time to time, not to exceed $3,000, and Dickinson agreed to endorse and turn over to the plaintiffs contracts such as above described, to be held by the plaintiffs as security for the repayment of such loans, with interest. It was further provided in the agreement that whenever the subscriber to one of such contracts should refuse to retain the piano delivered to him "the title and ownership of such piano shall pass to the first party" (i. e., the plaintiffs), and if a subscriber should forfeit his rights by non-performance of his contract, and the piano be reclaimed by Dickinson and re-sold to the other parties in the same manner, the new contract of sale should be endorsed and turned over to plaintiffs in lieu of the forfeited contract; or the plaintiffs might, at their option, themselves reclaim the piano "and the title and ownership

thereof shall thereby become vested in first party, who shall have the right to take immediate possession of such piano'' and sell the same to pay the indebtedness due from Dickinson. The agreement further provided: ''This agreement is intended   *   *   *   to be an assignment of all the rights and interests of second party'' (Dickinson) ''in all contracts for the conditional sale or leases of pianos endorsed and turned over, or which shall be endorsed and turned over to first party, and of all the rights and interests of second party in pianos mentioned in such conditional sales and leases, for the purpose of securing the payment of the money loaned or to be loaned by first party to second party, as aforesaid.''

In pursuance of this agreement, Dickinson deposited with the plaintiffs a number of such contracts, one of which was for a piano sold to Cora I. Leslie for $385, on May 14, 1907. It appears that a default was afterwards made on this contract, and that Dickinson resold the piano in June, 1908, to a Miss Strader, who paid $130 upon the same, leaving a balance due to Dickinson upon said contract of $255. It appears further, that when the amount of advances made by the plaintiffs to Dickinson had reached about $3,000, Dickinson executed and delivered to the plaintiffs his judgment note for $3,000. In January, 1908, Dickinson made a similar borrowing agreement with the defendant, and soon after, defendant took charge of all of Dickinson's books and accounts, and thereafter kept for him his books of account and memoranda regarding sales and transfers of pianos and piano contracts. Dickinson testified that at that time he told the defendant that plaintiffs had a claim upon the piano sold to Mrs. Leslie for advances made by them; that the defendant's secretary replied, in substance, that he wanted the number of every piano, whether it had been sold or not; and that thereafter everything collected must be sent to the defendant, who would ''put

it where it belonged, and the Merchants Exchange Bank would get its money.'' When Dickinson re-sold the piano in question to Miss Strader, the contract was sent to the defendant in due course of business and retained by it. Dickinson testified that he told defendant's officers that this contract belonged to the plaintiffs, and that the secretary agreed to send it to them; that he repeated this statement several times, until finally the secretary told Dickinson to attend to his own business. Dickinson insisted that defendant had the numbers of all the contracts and the pianos, and knew all about the different contracts, and knew that the Strader contract should have been sent to the plaintiffs.

On July 11, 1908, one of the plaintiffs wrote a letter to R. A. Crandall, the president of the defendant company, enclosing a ''list of our collateral in the Dickinson matter'' in which was a memorandum of the Leslie contract, and inquired as to their value. To this letter Crandall replied verbally that he would do what he could to see that the money collected was turned over to plaintiffs. On August 12, 1908, one of the plaintiffs wrote to Crandall mentioning the Leslie contract, and asking if it was a ''dead one,'' and if so, what Dickinson had done with the piano, stating also that Dickinson insisted that defendant ''had paper of his which he has not endorsed and turned over to you.'' Notwithstanding these letters, on August 20, 1908, Dickinson executed a formal assignment to the defendant company of a list of contracts, including the Strader contract. In September, 1908, the defendant sued Dickinson and levied on all the remaining pianos, and soon after, Dickinson filed a petition in bankruptcy. Later, the plaintiffs made a demand upon the defendant for possession of the Strader contract, and the demand being refused, brought suit in replevin, with the result above stated.

It is contended by defendant's counsel that the trans-

action between Dickinson and the plaintiffs was a mere executory agreement, and was not a valid assignment of the Strader contract; that no valid assignment can be made of property which, at the time, has neither actual nor potential existence; that plaintiffs had, at most, only an equitable interest, which would not support an action in trover; that the defendant was one of two innocent parties who have sustained loss through Dickinson's misconduct, and that the plaintiffs, having put it in the power of Dickinson to commit a fraud, must be the ones to suffer. To these contentions plaintiffs reply that the Leslie contract was, in fact, delivered to the plaintiffs; that such delivery, and the agreement under which it was delivered, constitute a pledge which gave the plaintiffs a valid lien upon the proceeds of the piano sold to Mrs. Leslie; that the defendants had full notice of the plaintiffs' rights, and were not innocent parties when they received the Strader contract; that the lien created by the pledge was not lost by the second sale to Miss Strader, even though made by Dickinson, the pledgor; and that under such circumstances, trover will lie for the value of such contract.

It will be noted that by the terms of the original agreement between Dickinson and the plaintiffs, the intention of Dickinson to assign to the plaintiffs the several contracts for the conditional sale of pianos, as such sales were made from time to time, is expressly stated, and that this declaration of intention was followed, so far as the piano here in question is concerned, by an actual deposit of the contract for the conditional sale thereof to Mrs. Leslie. There was, at that time, therefore, a completed transfer of the Leslie contract to the plaintiffs as collateral security for money loaned. It will also be noted that the agreement between Dickinson and the plaintiffs permits Dickinson, under certain conditions, to reclaim and re-sell the piano, but required the new contract, when received, to

be endorsed and turned over to the plaintiffs in lieu of and in substitution of the contract previously deposited. Under these circumstances, we are of the opinion that the character of the original deposit was that of a pledge of the proceeds of the sale of the piano, as security for money loaned; that the relation existing between Dickinson and the plaintiffs in June, 1908, when the second sale was made, was therefore that of pledgor and pledgee. This being true, the only real question for determination here is: Was the lien, created by the pledge of the Leslie contract, lost by permitting Dickinson to reclaim the piano and re-sell the same to Miss Strader in the manner and under the agreement stated above?

It is well established that an *unconditional* delivery of pledged property by a pledgee to the pledgor vests in the latter the complete title to such property. Continuance of possession is indispensable to the lien. When the custody over pledged property is abandoned, the lien created by the pledge is lost. But it is equally well established that if the thing pledged is delivered by the pledgee to the pledgor for a special and limited purpose, to be returned later to the pledgee in the same or in a substituted form, the lien of the pledgee will not be lost; and if the pledgor in such case refuses to return the article pledged or its substituted thing of value, an action will lie against him for the conversion. Kellogg v. Tompson, 142 Mass. 76; Cooper v. Ray, 47 Ill. 53; Hutton v. Arnett, 51 Ill. 198. "If property pledged is delivered by the pledgee to the pledgor, to sell or dispose of as his agent, and account to him for the proceeds, as agreed upon between them, this transaction would preserve the pledgee's title in the property, and would enable him to recover it of any person who wrongfully came into its possession." (Kellogg v. Tompson, *supra*, 79.) If, in such case, the agreement is that the thing pledged shall be taken by the pledgor and exchanged for other property, and

that such other property shall be substituted and held under the original contract of pledge, the lien attaches to the substituted property.  Palmtag v. Doutrick, 59 Cal. 154; Castle v. Hickman, 41 Pac. 1036; Way v. Davidson, 12 Gray, 465. It is also well settled that a pledgee may lawfully authorize the pledgor to act as his agent to collect assigned accounts or claims. Young v. Upson, 115 Fed. 192; Thayer v. Dwight, 104 Mass. 254.  The same principles apply to the class of pledges known as "hypothecations"—property to be thereafter acquired under an existing contract. Macomber v. Parker, 14 Pick. 497.  Such property had a potential existence, a possibility coupled with an interest.  Brewer v. Griesheimer, 104 Ill. App. 323, 329; Mallin v. Wenham, 209 Ill. 252.

Upon the authority of the foregoing cases, we entertain no doubt that the lien created by the pledge of the Leslie contract was not lost by permitting Dickinson, as the agent of the plaintiffs, to re-sell the piano to Miss Strader, and that the plaintiffs were entitled to the possession and proceeds of the Strader contract. Upon the facts shown, defendant was not an innocent purchaser, but took the same with full notice of the plaintiffs' rights.

The judgment of the Municipal Court will therefore be affirmed.

*Affirmed.*