JAMES H. MALLIN

*v.*

CHARLES F. WENHAM.

*Opinion filed April 20, 1904.*

1. ASSIGNMENTS—*assignment of wages to be earned is valid.* An assignment of wages to be earned in the future under an existing employment, even though the employment is for an indefinite time, is not against public policy and is valid if made for a valuable consideration and untainted with fraud.

2. BANKRUPTCY—*a discharge in bankruptcy does not destroy force of assignment of wages.* A discharge in bankruptcy does not render unenforceable prior assignment of wages to be earned in the future, since the discharge in bankruptcy is a personal release, which does not destroy the lien created by the assignment.

*Wenham* v. *Mallin,* 103 Ill. App. 609, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

In this case a bill is filed by appellant, Mallin, against appellee and Armour & Co. Mallin, for several years prior to the commencement of this suit, was employed continuously by Armour & Co. on a salary of $100 per month. He had no definite contract of employment, but was employed from month to month. Between October, 1897, and June, 1898, he from time to time borrowed money from appellee at usurious rates of interest. He obtained $342 more from Wenham than he ever paid back. On June 3, 1898, to secure his indebtedness to Wenham, he executed and delivered an assignment of wages, as follows:

"For a valuable consideration to me in hand paid by C. F. Wenham, the receipt whereof is hereby acknowledged, I do hereby transfer, assign and set over to said C. F. Wenham, his heirs, executors, administrators or assigns, all salary or wages, and claims for salary or wages, due or to become due me from Armour & Co., or from any other person or persons, firm, co-

partnership, company, corporation, organization or official by whom I am now or may hereafter become employed, at any time before the expiration of ten years from the date hereof.

"I do hereby constitute, irrevocably, the said C. F. Wenham, his heirs, executors, administrators or assigns, my attorney, in my name to take all legal measures which may be proper or necessary for the complete recovery and employment of the claim hereby assigned, and I hereby authorize, empower and direct the said Armour & Co., or any one by whom I may be employed as above, to pay the said demand and claim for wages or salary to the said C. F. Wenham, his executors, administrators or assigns, and hereby authorize and empower him or them to receipt for the same in my name.

"Chicago, Ill., third day of June, 1898.     J. H. MALLIN."

On May 3, 1899, Mallin filed his petition in bankruptcy, and his indebtedness to C. F. Wenham was scheduled in his bankruptcy proceedings, and Wenham had notice thereof. On October 23, 1899, he obtained his discharge in bankruptcy. Subsequently Wenham brought suit in the name of Mallin, for the use of Wenham, against Armour & Co., claiming the wages of Mallin by virtue of the above assignment. Mallin thereupon filed his bill without offering to re-pay the $342, or any part thereof, and prayed that said assignment be declared null and void, and that Wenham be restrained from prosecuting any suit against Armour & Co. or in any manner interfering with Mallin's salary. It was so decreed by the trial court, which decree, on appeal to the Appellate Court, was reversed and judgment entered in behalf of appellee. The Appellate Court having granted a certificate of importance, the case is now before this court.

The appellant urges as error the action of the Appellate Court in refusing to affirm the decree of the circuit court, in reversing said decree, and in directing the circuit court to dismiss the bill of complaint.

The assignments of error and the argument of appellant raise the following questions: (1) Whether an assignment transferring wages to be earned in the future, under an existing employment, is valid; (2) is such an

assignment against public policy; (3) the effect of a discharge in bankruptcy of a debtor, upon security or liens created by assignment.

H. H. REED, (A. R. URION, and A. F. REICHMANN, of counsel,) for appellant.

MORSE IVES, and GEORGE I. HAIGHT, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

In respect to the first proposition mentioned, the authorities are ample and conclusive to the effect that an assignment of wages to be earned in the future, under an existing employment, is valid. This precise question has frequently been passed upon by the courts of the different States and of England, and, so far as we are advised, the courts of *dernier ressort* have, without exception, upheld such contracts where they have been for a valuable consideration and untainted with fraud. The authorities are to the effect that it is not necessary that there be an express hiring for a definite time, but the existence of the employment at the time of the assignment is sufficient. In the case at bar, appellant was, and had been for some time previous, in the actual employ of Armour & Co. at a fixed price per month. It is true, such employment was not of any definite duration, and appellant might abandon the same at any time or his employer might discharge him. The subject matter of the contract had but a potential existence, but it was such a property right as might legally be disposed of. The remarks of the court in *Thayer* v. *Kelley*, 28 Vt. 19, (65 Am. Dec. 220,) are very pertinent to the subject in hand, and we here quote them: "When the debtor is in the actual employment of another and is receiving wages under a subsisting engagement, an assignment by him of his future earnings may be made, not only for the security and payment of a present indebtedness, but for such advances as he may find it necessary to obtain.

This principle is fully established by the cases to which we were referred. (*Weed* v. *Jewett*, 2 Metc. 608; 37 Am. Dec. 115; *Brackett* v. *Blake*, 7 Metc. 335; 41 Am. Dec. 442; *Field* v. *Mayor of New York*, 6 N. Y. 187; *Emery* v. *Lawrence*, 8 Cush. 151.) The debtor in this case, at the time of his assignment to the claimants, was in the actual employment of the trustees under a subsisting contract, at a given price per day, and had in that manner labored for them for some two or three years previous; and though he had the right to leave their employment and they had the right to discharge him, yet so long as that relation existed between them we think the authorities are satisfactory in holding that the claimants were entitled to receive, under that assignment, his accruing wages in payment of the advances which they had made." In support of the above doctrine reference is made to the following cases: *Kane* v. *Clough*, 36 Mich. 436; *Manly* v. *Bitzer*, 91 Conn. 596; *Metcalf* v. *Kincaid*, 87 Iowa, 443.

The second proposition urged by appellant is, that the assignment in question is against public policy, and for that reason ought not to be upheld. This question was raised in the case of *Edwards* v. *Peterson*, 80 Me. 367, (6 Am. St. Rep. 207,) and the court there held such an assignment did not contravene public policy, and quoted with approval from the case of *Smith* v. *Atkins*, 18 Vt. 461, in which case it was said: "It is argued that such contracts are so much against public policy that they ought not to be supported, but we think they are rather beneficial, and enable the poor man to obtain credit when he could not otherwise do it, and that without detriment to the creditors." And further, in the *Edwards case, supra,* the court say, speaking of an assignment of wages to be earned in the future: "It cannot be said to contravene public policy. (*Smith* v. *Atkins*, 18 Vt. 461.) The consideration was most meritorious, and the assignment was not given to delay creditors." And further: "The true doctrine seems to be, that to make a grant or assignment

valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of such grant or assignment. But courts of equity support assignments, not only of choses in action, but of contingent interests and expectations, and also of things which have no present actual or potential existence, but rest in mere possibility only,"—citing numerous cases.

Appellant, in this connection, calls attention to the statutes and exemption laws of this State, and insists that the liberal provisions made by the legislature for the indigent and poorer classes indicate the adoption of a broad and liberal public policy toward the classes named, and that it is the duty of this court to so construe the law that the class and individuals so favored by the statute shall be compelled to accept of its beneficent provisions. Such is not the province of this court. The citizens of the State have a right to contract, and there is no law forbidding one from selling or assigning any property he may have. A person has the same right to assign his wages that he has to mortgage his homestead or to mortgage personal property that is exempt from execution. The statute provides liberal exemptions, of which a person has the right to avail himself if he so desires, but if he does not, the courts are powerless to help him. The duty of the courts in instances of this kind is well laid down in the case of *Carroll* v. *City of East St. Louis,* 67 Ill. 568 (on p. 579): "It is the legislative and not the judicial power in the State that must control and give shape to its public policy. That power does not pertain to the courts. They can only observe that policy and apply it to cases as they arise, without changing or obstructing it." Also in the case of *Frorer* v. *People,* 141 Ill. 171, it was said (p. 185): "Other instances of statutory regulations of private rights are, in lien laws in favor of homesteaders, mechanics, etc.; limitation laws; the Statute of Frauds, and other statutes relating to evidence; laws in regard to pleadings; exemption laws and

insolvent laws. But these all relate, not to the power to contract in regard to matters of general right, but to the remedy for the enforcing of contracts, as to which the legislature may make such regulations as the public welfare seems to demand, so long as, under pretense of regulating the remedy, it does not impair the right itself." We also endorse the doctrine laid down in Greenhood on Public Policy, (pp. 116, 117,) as follows: "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. Before a court should determine a transaction which has been entered into in good faith, stipulating for nothing that is *malum in se*, to be void as contravening the policy of the State, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial,—not theoretical or problematical. He is the safest magistrate who is more watchful over the rights of the individual than over the convenience of the public, as that is the best government which guards more vigilantly the freedom of the subject than the rights of the State."

The assignment of appellant's wages was simply a lien on the same so long as he remained in the employ of Armour & Co. and until the indebtedness secured thereby was satisfied. Should appellant quit his employment with Armour & Co. he would by that act destroy the assignment as security, or should he pay his debt to Wenham he could not be injured in any way by his assignment. Thus it will be seen that there is but little to support appellant's contention that the assignment was a harsh and unconscionable bargain. In the case of *Kane* v. *Clough, supra,* the assignor made an assignment "of all the wages that might thereafter become due to him from the defendants," and the transaction was upheld. In the case of *Weed* v. *Jewett, supra,* the assignment was "for all

209—17

sums of money that may now be due to me from the Chicopee Manufacturing Company, etc., for labor performed in their service," and the court, in concluding its opinion in that case, say: "This was a proper subject of contract or agreement, and when the labor was performed the company were bound to pay according to their undertaking."

The question of usurious interest is not an element in this case, but if relief is desired to be had against such, appellant has his proper remedy. The record, however, discloses that appellant has obtained $342 in actual cash which he has not re-paid.

We cannot see that there is anything intrinsically vicious in an assignment of wages. The assignor, in such case, simply draws upon his future prospects to supply present needs, which may be of the most urgent and pressing character. There is no law in this State to prevent a poor person from mortgaging or pledging any or every article of property he possesses, as security for his debts, and such a privilege may be of great value. On the whole, we see no reason or right for holding the assignment in question here void as against public policy.

It is next insisted by appellant that because of bankruptcy proceedings had by him the assignment is unenforceable. This position, we think, is wrong. The only effect of a discharge in bankruptcy is to suspend the right of action for a debt against the debtor personally. It does not annul the original debt or liability of the debtor. In *Bush* v. *Stanley*, 122 Ill. 406, the court said (p. 416): "The discharge is analogous, in effect, to the Statute of Limitations, in so far as it does not annul the original debt, but merely suspends the right of action for its recovery." In *Pease* v. *Ritchie*, 132 Ill. 638, this court further said (p. 646): "It is no doubt true that appellant's discharge in bankruptcy operated as a bar to any action which might be brought to recover any debt or obligation existing at the time he was declared

a bankrupt, and after acquired property was exempted from being taken in satisfaction of any such debts. But if any creditor had a lien or an equitable claim, by mortgage or otherwise, upon any property of the bankrupt, such right or rights would remain unaffected by the proceedings in bankruptcy."

In the case of *Edwards* v. *Peterson, supra*, an employee had given an assignment of his wages. Subsequently he filed a petition for discharge under the insolvent law of the State, and in its opinion the court there said: "The rule laid down by Judge Story in *Mitchell* v. *Winslow*, 2 Story, 630, seems to have been very generally held by all chancery courts in this country. He says: 'It seems to me a clear result of all the authorities, that whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice in bankruptcy.'" The language above quoted is also quoted with approval in the case of *Gregg* v. *Sanford*, 24 Ill. 17.

In the case of *Champion* v. *Buckingham*, 42 N. E. Rep. 498, it was held that a creditor who has not proved his debt in bankruptcy is still, after discharge of the debtor, a subsisting creditor against him to the extent of his debt, which he is entitled to have paid out of the proceeds of a policy of insurance on the life of the debtor assigned to him by the debtor and beneficiary to secure subsisting demands in favor of the creditor, and it was said that the discharge did not extinguish the debt or demand, but that the effect of such discharge is analogous to that of the bar of the Statute of Limitations, which only goes to bar a creditor's remedy and does not wipe out the debt.

In discussing the right of a creditor to maintain an action on a collateral agreement as security after the debt so secured has become barred by the Statute of Limitations, it was said in *Shaw* v. *Silloway*, 14 N. E. Rep. 783: "If there is an actual pledge and the debt becomes barred, this does not give to the debtor a right to re-claim his pledged property. The debt is not extinguished—the statute only takes away the remedy. (*Hancock* v. *Insurance Co.* 114 Mass. 156.)  In case of a mortgage of real or personal estate the security is not lost though the debt be barred. (*Thayer* v. *Mann*, 19 Pick. 535.)  The rule is the same where there is a lien. (*Spears* v. *Hartly*, 3 Esp. 81; *Higgins* v. *Scott*, 2 Barn. & Adol. 413; *In re Bromhead*, 16 L. J. Q. B. 355.)  And there appears to be no good reason why an independent collateral agreement, given by way of guaranty or other security, should not outlive the remedy upon the debt which it was given to secure, under proper circumstances."

Section 67*d* of the Bankruptcy law of 1898 provides: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."  In this case there is no question of notice of the assignment, nor was it such a one as required any notice to be given, consequently we think the assignment in question was one "not affected by this act."

We think the decided weight of authority is to the effect that a discharge of a debtor in bankruptcy is but a personal release, and does not exonerate the effects of the debtor to which a valid lien has attached and which is not expressly annulled by the provisions of the Bankruptcy act.

The assignments of error, we think, are without merit, and the judgment of the Appellate Court should be and is affirmed.          *Judgment affirmed.*