Summers, J.
Two of the questions argued by plaintiff in error, namely, that the assignment, not having been accepted by the debtor, was not effective against the attaching creditor, Ida E. Chandler; and that the assignment, being of a part only of a chose in action, is not enforcible against the debtor, are not presented by the record. The first because Ida E. Chandler is hot a party to the proceeding in error *116 and the’second because the railroad company did not refuse payment.
The question presented is the right of a person in the employ of another, in the absence of a contract for a definite time of employment, to assign future earnings from such employment.
It is well settled that a mere expectancy or possibility is not assignable at law, consequently wages to be earned in the future, not under an existing engagement but qnder engagements subsequently to be made, are not assignable. If there is an existing employment, under which it may reasonably be expected that the wages assigned will he earned then the possibility is coupled with an interest and the wages may be assigned. Mallin v. Wenham, 209 Ill., 252; Metcalf v. Kincaid, 87 Ia., 443; Peterson v. Ball, 121 Ia., 544; Bell v. Mulholland, 90 Mo. App., 612; Manly v. Bitzer, 91 Ky., 596; Schilling v. Mullen, 55 Minn., 122; Augur v. N. Y. B. & P. Co., 39 Conn., 536; Garland v. Harrington, 51 N. H., 409; Mulhall v. Quinn, 1 Gray, 105; Hartley v. Tapley, 2 Cray, 565; Brackett v. Blake, 7 Metc., 335; Low v. Pew, 108 Mass., 347; Lightbody v. Smith, 125 Mass., 51; O’Keefe v. Allen, 20 R. I., 414; Dolan v. Hughes, 20 R. I., 513; Thayer v. Kelley, 28 Vt., 19.
' Some of the early cases were to the effect that the engagement must be for a time covering the wages assigned. Mulhall v. Quinn, 1 Cray, 105; Hartley v. Tapley, 2 Cray, 565; Taylor v. Lynch, 5 Cray, 49; Lannan v. Smith, 7 Cray, 150. And later cases held that the assignment was valid although the engagement was subject to be terminated at any time.
But in Kane v. Clough, 36 Mich., 436, Cooley, C. J., states that he is unable to distinguish a case of existing employment merely, where there is no con *117 tract for a definite time, bnt only an employment, and an expectation of continuous work, from a case of an existing contract for a fixed time but subject to the right to discharge at will, and, accordingly, it is there ruled that an assignment of wages to be earned in the future under an existing employment is valid.
“An assigmnent of wages to be earned in the future under an existing employment, even though the employment is for an indefinite time, is not against public policy and is valid if made for a valuable consideration and untainted with fraud.” Mallin v. Wenham, 209 Ill., 252. ‘ ‘ An assignment of wages yet to be earned is good as against the claims of attaching creditors, if accepted, and if, at the time it is made, there is an existing engagement or employment by virtue of which wages are being, and in the future may reasonably be expected to be earned, even though there is no contract or fixed time of employment.” Metcalf v. Kincaid, 87 Ia., 443. ‘ ‘An assignment of wages to be' earned, made in good faith and for a valuable consideration, is valid. And it makes no difference that the work is being done without a special contract as to it, but only upon an understanding that the employe should continue in the service of the employer ,,as before, at the usuaL wages and in the ordinary course of employment.” Augur v. N. Y. B. & P. Co., 39 Conn., 536. “The fact that a contract of employment is silent ás to the time of its termination does not affect the right of the employe to assign his wages arising under the contract. If the hiring be by the day it is not necessarily for a single day but is a .continuous hiring by the day so long as the contract continues.” Dolan v. Hughes, 20 R. I., 513. “A person in the actual *118 employment of another from whom he is receiving wages at a stipulated rate, may make a valid assignment of his future earnings; although the employment is for no definite period, and may be terminated at any time by either party.” Thayer v. Kelley, 28 Vt., 19. “An assignment of prospective wages, to be earned under an existing employment of either certain or uncertain duration, if made in good faith for a valuable consideration, is upheld by the courts, whether intended as a security for present or future advances, or as an outright sale. But if the assignor has no employment at the date of the assignment, which is executed in contemplation of the possible future employment it may attach to, the contract is invalid.” Bell v. Mulholland, 90 Mo. App., 612. “Future wages to be earned under a present contract imparting to them a potential existence, may be assigned although the contract may be indefinite as io time and amount, unless affected by the statute requiring registration.” Wade v. Bessey, 76 Me., 413. “When a party has entered into a contract or .arrangement, by the ordinary and legitimate and natural operation of which he will acquire property, his existing right thereunder is not a mere naked hope; it is a possibility of acquiring property coupled with a legal interest in the contract. The cargo to be obtained or the freight to be earned by a ship on a voyage already contracted for, the wages to be earned under an existing employment, the payment to become due under an existing building contract, are familiar examples. ’ ’ Pomeroy Equity Jurisprudence, sec. 1286.
“An assignment of his wages.by a laborer, executed when he is' not engaged in, and not under contract for, the employment in which the wages are *119 to be earned is too vagne and uncertain to be sustained as a valid assignment and transfer of property.” Lehigh V. R. Co. v. Woodring, 116 Pa. St., 513. But “an assignment of wages expected to be earned in the future in a specified employment, though not under an existing employment or contract is valid in equity.” Edwards v. Peterson, 80 Me., 367. The reason such an assignment is not good at law but may be in. equity is tersely stated thus: “To make a grant or assignment valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of such grant or assignment. But courts of equity support assignments not only of choses in action, but of contingent interests and. expectations, and also of things which have no present actual or potential existence, but rest in mere possibility only.” Smithhurst v. Edmunds, 1 McCart., 416. .'“The invalidity of a grant at law of a mere expectancy imports no more than that it is ineffectual to pass the legal title. Equity construes the instrument as imposing a lien upon the res when produced or acquired, leaving the legal title still in the grantor, who may by some act ratify the same, as by delivery of the property, and then the legal title is complete in the vendee.” Everman v. Robb, 52 Miss., 653. “The reason that it may be different in equity is .not that a man conveys in presentí what does not exist, but that what is in form a conveyance operates in equity by way of present contract merely, to take effect and attach to the things assigned as soon as they come in esse; to be regarded before that time only as an agreement to convey, and after that time as a conveyance.” Peters, J., in Emerson v. E. & N. Ry. Co., 67 Me., 387, 391.
*120 The case of Lehigh V. R. Co. v. Woodring, 116 Pa. St., 513, supra, is principally relied upon by plaintiff in error. But that case is not an authority against the conclusion reached in the present case but rather supports it, for it impliedly admits that an assignment of future wages under an existing employment is valid, which is the fact in the case under consideration, and it then holds that an assignment of wages to be earned in the future and not under an existing contract is invalid, with which question we are not at present concerned.
It is true that the judge of the lower court in that case in his opinion says that all such assignments should be declared void as being against public policy and further “Should the law be declared to be that such an assignment is valid, it is not difficult to see that it would open the door to improvidence and profusion on the part of the assignor, and in the end to utter and hopeless poverty. Take the case of any wage earner, or salary earner, or any one who is compelled to work for a living, for in either case the principle is the same. He conceives himself to be in want of money, whether for necessaries or luxuries makes no difference. He finds that he can raise the coveted money by assigning his future earnings to become due from any and every source. No purchaser offers for his wages in any existing employment, for he may quit that employment at any time and thus render worthless his assignee’s security. He therefore, under the pressure of his supposed wants, pledges his whole money-earning power for a price. Presently the money or provisions, or what not, thus acquired are all gone. They may have been recklessly squandered; they may have been doled out only for the very necessaries of *121 life, during a period of sickness or other misfortune; it’s all the same. He is not only penniless, hut he has incurred a debt which it may require months and even years to work off. Turn where he will, g*o where he will, his creditors may follow him and sweep away every dollar of his earnings until his debt is paid. In the meantime his children are clamoring for bread.”
These reasons are very like those which are said by Denman, J., in Hale v. Hollon, 90 Tex., 427-430, to' have led the courts of equity to refuse to enforce a sale of a mere expectancy of inheritance unless it was shown that the transaction was free from fraud.. But the judge in the Pennsylvania case, supra, even in what is said respecting public policy liad reference to an assignment of all wages past and future so long* as the assignee’s claim remained unpaid, which is not the present, case. But it is said that in 1905, the year following the decision in Mallin v. Wenham, supra, the legislature of Illinois passed an act in relation to the assignment of wages, the fourth section of which provided that “every assignment of wages to be earned in whole or in part more than six months from and after the making of such assignment shall be absolutely void.” This, however, does not tend to discredit the correctness of'the conclusion reached but only to show that in the opinion of the legislature there was need of legislation.
In Smith v. Atkins, 18 Vt., 461, it is held that “a lease of land, reserving rent, and which provides that all the crops raised on the land during the term are to be the property of the lessor until rent is paid, is valid.” And in the opinion Redfield, J., says: “It is argued, that such contracts are so much, against public policy, that they ought not to be sup *122 ported. But we think, they are rather beneficial, and enable the poor man to obtain credit and the use of land, when he could not otherwise do it, and that without detriment to the creditors. And we do not perceive how this will enable him to deceive any one, as the nature of his property may be as well ascertained in such case, as in any other. So far as there is any principle of policy involved in questions of property, it is supposed to have reference to the security of property and credit to those who most stand in need of such protection, who are not generally of the same class of persons. The rule here adopted, we think, secures both far better than the opposite rule could.”
The case immediately preceding was cited with approval on the question of public policy in the case of Edwards v. Peterson, 80 Me., 367. In Manly v. Bitzer, 91 Ky., 596, 598, Chief Justice Holt says: “Looking at the question from the standpoint of public policy, there are two views presented, which, perhaps, balance each other. If the wage-earner in a case like this one be permitted to sell and transfer his unearned wages, the honest creditor may sometimes be defrauded; but, upon the other hand, it may often be necessary to the subsistence of the laborer and his family, as is claimed was true in this instance. ’ ’
In Godcharles & Co. v. Wigeman, 113 Pa. St., 431, the court had under consideration an.act (1881 P. L., 147) requiring persons and companies engaged in any kind of manufacturing to “settle with their employes at least once in each month and pay them the amounts due them for their work or services in lawful money of the United States or by the cash order as described and required in section 3 of this *123 act; provided that nothing herein contained shall affect the right of an employe to assign the whole or any part of his claim against his employer. ’ ’ And it is said “The orders given by the defendants and received by the plaintiff constituted a proper set-off. The first, second, third and fourth sections of the act of June 29, 1881, are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the legislature to do what, in this country, cannot be done; that is, prevent persons who are sui juris from making their own contracts. The act is an infringement alike of the right of the employer and the employe; more than this, it is .an insulting attempt to put the laborer under a legislative tutelage, which is not only degrading to his manhood, but subversive of his rights as a citizen of the United States.
“He may sell his labor for what he thinks best, whether money or goods, just as his employer may sell his iron or coal, and any and every law that proposes to prevent him from so doing is an infringement of his constitutional privileges, and consequently vicious and void.”
Whether or not an act precluding an assignment of wages would be constitutional we are not called upon to determine, but it is worthy, of note, on the question of public policy, that in the act just referred to the legislature thought it proper to safeguard the right of the employe to assign his wages.
In The Brooks Co. v. Tolman, 6 O. C. C. (N. S.), 137, it was held that “an assignment of wages or salary to be earned under an existing employment, made in good faith and for a valuable consideration, is valid where the relation between the employe and his employer is such that the employe may reason *124 ably be expected to earn the wages covered by the contract, and against such a contract and claim even homestead exemption cannot prevail.” That case was affirmed 74 Ohio St., 427.
The question there presented is the same as that raised here. In each case the wages earned were earned under an engagement existing at the time the assignment was made.
The assignment in each case is not limited to the wages to be earned under the existing employment but in express terms includes those to be earned in any other employment, but the question whether the assignment would be effective as to wages earned under engagements other than the one existing is not raised and is not considered. Brewer v. Greisheimer, 104 Ill. App., 323.
In Porter v. Dunlap, 17 Ohio St., 591, a teacher engaged in teaching assigned a specific amount of his wages earned and unearned and it was ruled that the assignment was good in equity. The question whether it was good at law does not seem to have been presented and was not considered.

Affirmed.

Shauck, C. J., Price, Crew and Davis, JJ., concur.