Artie A. Brown, Appellant, v. Harry R. Cunningham and I. E. Merritt, Executor of Estate of Mary R. Cunningham, Deceased, Appellees.

Gen. No. 9,201.

October term, 1939. Heard in this court at the Opinion filed January 15, 1940.

Couchman & Couchman, of Hoopeston, for appellant; G. H. Couchman and Henry Couchman, of counsel.

Dyer & Dyer, of Hoopeston, and Acton, Acton & Baldwin, of Danville, for appellees; W. M. Acton and H. H. Acton, of counsel.

Mr. Justice Hayes delivered the opinion of the court.

This is a suit in equity to enforce an assignment of an expectancy, seeking to establish a lien against the inheritance of the assignor or to divest him of title in a certain tract of real estate inherited by him and to vest it in the plaintiff. The case was tried without a jury and only one witness, as most of the facts were stipulated and agreed upon.

Defendant Cunningham, who was the assignor, pleads the statute of limitations, a discharge in bankruptcy, and payment. Plaintiff denies that any payment was made and questions the legality of the two legal defenses.

After a trial, the court rendered a decree against the plaintiff holding that the defense of a discharge in bankruptcy was a sufficient defense.

It appears from the record, that on December 15, 1913, the defendant Harry R. Cunningham, was indebted to Samuel J. Brown for nine hundred sixty-three ($963) dollars, and executed a written assignment, under seal, to secure said debt, assigning all right, title and interest to the extent of $963, that he might have or be entitled to as heir, legatee, or devisee, in and to the estate of his mother, Mary R. Cunningham, at her death, and acknowledged the same before a notary public. On November 22, 1915, the defendant was adjudged a bankrupt in the United States District Court for the Eastern District of Illinois and duly

received his discharge, and said debt was scheduled in said bankruptcy proceedings among the liabilities.

It further appears that Samuel J. Brown, died testate on October 27, 1917, and that under his will, all the personal property went to his wife Artie A. Brown, the plaintiff herein. The inventory in his estate, as filed in the probate court, did not list the assignment of Harry R. Cunningham, nor did it list any indebtedness due from Harry R. Cunningham to said estate of Samuel J. Brown, deceased, and said estate of Samuel J. Brown was closed on April 15, 1918.

Mary R. Cunningham, mother of Harry R. Cunningham, died testate on the 11th day of February, 1937, and in her will devised a certain tract of land to her son Harry R. Cunningham, the defendant.

On April 16, 1938, Artie A. Brown obtained an order from the probate court of Vermilion county, Illinois, to open the estate of Samuel J. Brown, deceased, and permit the filing of a supplementary inventory, listing for the first time the assignment of Harry R. Cunningham to Samuel J. Brown, being the assignment set up in the complaint in this case.

The rule in Illinois is that an expectancy of an inheritance may be assigned for a good consideration and that equity will enforce the assignment on the theory of specifically performing the contract to convey the inheritance when it vests upon the death of the ancestor. *Donough v. Garland,* 269 Ill. 565, *Hudnall v. Ham,* 183 Ill. 486.

Plaintiff contends that a discharge in bankruptcy of one who has assigned his expectancy in an estate to secure a loan does not destroy the lien which equity imposes upon the property, although the legal obligation to pay the debt is terminated, and cites *Mallin v. Wenham,* 209 Ill. 252; *Dumont, Roberts & Co. v. McDougal,* 200 Ill. App. 583; and *Bridge v. Kedon,* 163 Cal. 493, 43 L. R. A. (N. S.) 404.

*Mallin v. Wenham, supra,* was expressly overruled by the Supreme Court of the United States in the case of *Local Loan Co. v. Hunt,* 292 U. S. 234, 78 L. Ed. 1230, 54 Sup. Ct. 695. The Supreme Court of Illinois in the *Mallin* case held that the assignment of wages earned in the present employment was not barred by a discharge in bankruptcy. Following the reasoning of that case, the Appellate Court of this State in *Dumont v. McDougal, supra,* applied the same rule to an assignment of an expectancy of an heir. Section 8 of Art. I of the Constitution of the United States delegates to congress the power to establish uniform laws on the subject of bankruptcy throughout the United States.

Our Supreme Court said in the case of *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.,* 256 Ill. 196, 205: "The constitution of the United States, the laws of Congress made in pursuance thereof, and treaties made under the authority of the United States, are by paragraph 2 of article 6 of the constitution of the United States made the 'supreme law of the land' and are binding upon all the courts of all the States, anything to the contrary in the constitution or laws of a State notwithstanding. It follows necessarily from this constitutional provision, that where a suit in the State court involves a question arising under the constitution, laws or treaties of the United States, or, in other words, what is commonly called a 'Federal question,' a decision of the United States Supreme Court upon the point at issue is to be regarded as absolutely binding and authoritative, and in such case, if the Supreme Court of a State should entertain a different view, it will follow the Federal Supreme court, reversing and overruling, if necessary, its own previous decisions to the contrary."

Paragraph 67 (d) of the Bankruptcy Act provides:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a

present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this Act.'' U. S. C. title 11, section 107 (d).

In the *Hunt* case, the United States Supreme Court cites with approval *In re West* (D. C.) 128 Fed. 205, 11 Am. Bankr. Rep. 782:

''The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors.'' On this subject the opinion of the court in the *Hunt* case says:

''The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence. An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, pre-existing property but brought into being solely as the fruit of the subsequent labor of the bankrupt.''

In the case at bar, plaintiff attempts to distinguish between the assignment of wages to be earned by labor in the future, and the expectancy of an heir to inherit in the future. Under the rule, as laid down in the

*Hunt* case, there is no difference. The property that the lien is to attach in either case is not in existence at the time of the adjudication of bankruptcy, but in each its creation depends upon future events. In the *Hunt* case, the court in its opinion points out: ''It is important to bear in mind that the present case is one not within the jurisdiction of a state court, but is a dependent suit brought to vindicate *decrees of a federal court of bankruptcy entered in the exercise of a jurisdiction essentially federal and exclusive in character.*'' The court is careful to limit its decision in the *Hunt* case to bankruptcy cases, and on this point says:

''We find it unnecessary to consider whether this contention would in a different case find support in section 34 of the Judiciary Act of (September 24), 1789, now section 725, title 28, U. S. C., since we are of opinion that it is precluded here by the clear and unmistakable policy of the bankruptcy act. . . . Confining our determination to the case in hand, and leaving prospective liens upon other forms of acquisitions to be dealt with as they may arise, we reject the Illinois decisions as to the effect of an assignment of wages earned after bankruptcy as being destructive of the purpose and spirit of the bankruptcy act.'' The court points out in the *Hunt* case, on public policy, that the bankrupt should have a clean slate and a new start, and in this connection says:

''One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the

pressure and discouragement of pre-existing debt. The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result cannot be accepted as controlling the action of a federal court.''

The Appellate Court of Illinois, Second District, in *Dumont v. McDougal, supra,* treated the assignment of an expectancy of an heir the same as an assignment of wages to be earned in the future.

It is true that while the decision in the *Hunt* case was one regarding the assignment of wages, the principle of the decision is controlling as to the assignment of an expectancy, and no reason can be advanced why the assignment of an expectancy creates a vested present right in property, any more than an assignment of wages to be earned under a present contract of employment.

The circuit court of appeals, *In re Skorcz,* 67 F. (2d) 187, in refusing to follow the decisions in Illinois, noted that the weight of authority was to the contrary of the Illinois decisions, and said: ''it would be strange if the dominant grant to Congress to legislate upon bankruptcy and insolvency, and which, when exercised, supersedes state legislation respecting these matters, should nevertheless be subordinate to the right of each state to determine what is or shall be property, subject to the terms of the Bankruptcy Act. . . . Future wages are conditional in their nature, being dependent upon performance of the services to be rendered. It follows therefore that an assignment given against such wages cannot create a legal lien since there is no property in being at the time the assignment is given. The lien must therefore be an equitable one which cannot attach until the property comes into being. If in the meantime the debt has been discharged by the action in bankruptcy, the lien falls.''

In view of the holding in *Local Loan Co. v. Hunt,* *supra,* we are compelled to hold that the discharge in bankruptcy was a bar to the assignment of expectancy in this case and affirm the decree of the circuit court.

*Decree affirmed.*