(No. 11327.—Decree affirmed.)

THE MONARCH DISCOUNT COMPANY, Appellant, *vs.* THE CHESAPEAKE AND OHIO RAILWAY COMPANY OF INDIANA *et al.* Appellees.

*Opinion filed October 21, 1918—Leave to file second petition for rehearing denied December 4, 1918.*

1. ASSIGNMENTS—*the right of an assignee of wages to sue therefor is the same as that of the employee.* The right of an assignee of the salary or wages of an employee to institute suit to reach such salary or wages is the same as that of the employee.

2. SAME—*debts have no locus or situs.* Debts have no *locus* or *situs* but accompany the creditor everywhere, and a demand on the debtor is authorized everywhere.

3. SAME—*creditor may garnishee another person in a foreign State.* A creditor has the right to garnishee another person in a

State different from the State in which the parties are living on the ground that he is really in such proceeding a representative of the creditor of the garnishee and therefore has the same right to commence the suit in a foreign State that the original creditor has.

4. SAME—*assignment of wages earned in foreign State may be enforced in this State.* If service can be had upon the employer in this State, either the employee or the assignee of his wages may enforce a contract for wages earned in a foreign State, and the assignment made in this State will be governed by laws of this State.

5. SAME—*assignment of future wages is not against public policy.* In Illinois an assignment of wages to be earned in the future under an existing employment, even though the employment is for an indefinite time, is not against public policy and is valid if made for a valuable consideration and untainted with fraud.

6. SAME—*discharge in bankruptcy does not render unenforcible a prior assignment of future wages.* A discharge in bankruptcy does not render unenforcible a prior assignment of wages to be earned in the future, since the discharge in bankruptcy is only a personal release, which does not destroy such a lien as is created by the assignment.

7. SAME—*proof must be clear to warrant reformation of assignment.* To warrant the reformation of an assignment on the ground of a mistake of fact the party asserting such fact must prove by clear and satisfactory evidence that the mistake was a mutual one.

8. CORPORATIONS—*Wage Loan Corporation act of 1913 is not an amendment of general Incorporation act and is not invalid.* The Wage Loan Corporation act of 1913 is not an attempted amendment of the general Incorporation act nor of any section thereof but is complete in itself and as a whole is not invalid, and the fact that it provides the same method of organization as is provided for by the general Incorporation act does not make it an amendment of that act.

9. SAME—*section 6 of Wage Loan Corporation act of 1913 is not broader than title of act.* Section 6 of the Wage Loan Corporation act of 1913 does not include all notes and wage assignments but only those made to wage loan corporations and is not broader than the title of the act.

10. SAME—*a foreign loan corporation licensed in this State is bound by the Wage Loan Corporation act of 1913.* A foreign loan corporation licensed to do business in this State and engaged in taking assignments of wages as security for loans is bound by the provisions of the Wage Loan Corporation act of 1913.

11. SAME—*section 6 of Wage Loan Corporation act makes assignment of wages void only after note is assigned.* Section 6 of the Wage Loan Corporation act, requiring a note secured by an

assignment of wages to recite such fact on the face of the note, is intended to give notice, and a failure to comply with such requirement makes the assignment of wages void only in case the note has been assigned.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

ELLIOTT R. GOLDSMITH, for appellant.

WORTH E. CAYLOR, for appellees.

Per CURIAM : The Monarch Discount Company filed its bill in the circuit court of Cook county against appellees, the Chesapeake and Ohio Railway Company of Indiana and James H. Beckett, praying for the reformation of an assignment of wages alleged to have been given to appellant by Beckett to secure the payment of a note executed by him in favor of appellant for money borrowed. The assignment purported to transfer to appellant the wages, salary and all compensation earned and to be earned by Beckett from the Chesapeake and Ohio Railway Company up to and including September 14, 1919. The note for which the assignment was alleged to have been given as security was for $71.50, payable in installments of $5 each, except the last installment, which was for $6.50, due April 10, 1915. The note and assignment were each on printed forms for that purpose. The bill alleged, in substance, that at the time the note and assignment were executed Beckett was not an employee of the Chesapeake and Ohio Railway Company but was employed by the Chesapeake and Ohio Railway Company of Indiana; that they are two distinct corporations, the former a Virginia and the latter an Indiana corporation; that it was the intention of the parties that the assignment should give the true name of Beckett's employer; that Beckett's statement of the name of his employer was accepted and inserted in the assignment; that Beckett either did not know the true name of his employer, causing a

mutual mistake on the part of himself and appellant as to that fact, or else he perpetrated a fraud on appellant by purposely misinforming it of the correct name of his employer. The relief asked was that the assignment be reformed by changing the name Chesapeake and Ohio Railway Company to Chesapeake and Ohio Railway Company of Indiana, and for an accounting of the moneys in the hands of the latter as the employer of Beckett, due him at the time of service of process. The discovery of the mistake was alleged to have been made when appellant brought a suit in the municipal court of Chicago to recover on the assignment. Said company appeared in that action and defended upon the ground that it was not the corporation named in the assignment, and appellant was non-suited in that case.

Appellees filed their joint answer to the bill, admitting that appellant was a corporation engaged in the money loaning business at the time of the execution of the note and assignment, September 14, 1914; denied that Beckett signed the assignment set forth in the bill; alleged usury; admitted that Beckett was working for the appellee corporation September 14, 1914; admitted the filing of a suit by appellant in the municipal court which was non-suited, as alleged in the bill; denied that there was any mutual mistake in the instrument or that Beckett had perpetrated any fraud on appellant; averred Beckett was, and had been for many years, a resident of Hammond, Indiana, and that all moneys earned by him were earned and payable in the State of Indiana, and that under the laws of that State an assignment of future wages was void. It was further alleged in the answer that on January 21, 1915, Beckett was adjudged a bankrupt in the United States district court for Indiana; that his petition was filed, and in his schedule filed in said proceeding he listed $71.40 as borrowed money from appellant and on August 1, 1915, received his discharge; that he had not incurred any liability to appellant

since his discharge and that the debt scheduled as borrowed money is the same debt described in appellant's bill. The defenses were interposed by an unsworn answer and there was no verified plea denying execution of the assignment.

Replication was filed and the cause referred to a master in chancery to take the testimony and report the same with his conclusions. The master found and reported that admitting all the material allegations of the bill to be true, and this without reference to whether the same are substantiated by the testimony and proofs, the decision must turn upon the law; that the transaction is governed by the laws of this State, including the 1913 act regulating wage loan corporations; that the note introduced in evidence and relied upon by appellant showed that the provisions of the 1913 act had not been complied with, in that it was not stated upon the face of the note that it was secured by a wage assignment, and the assignment was therefore void; that further, appellant's claim had been listed by Beckett in his petition in bankruptcy and was therefore discharged, and also if the assignment be construed under the Indiana law it is void. Objections filed to the master's report were treated as exceptions before the chancellor, where the same were overruled, the report of the master confirmed and the bill dismissed for want of equity. The appeal is brought direct to this court on the ground that the validity of a statute is involved.

In support of the defense that the assignment is void under the laws of Indiana appellees introduced in evidence a statute of that State providing that no assignment of wages or salary by a married man who should be the head of a family residing in that State shall be valid or enforceable without the consent of his wife, evidenced by her signature and acknowledgment. This evidence was further supported by the introduction of two Supreme Court cases of that State holding the act valid. It is conceded by appellant that if the law of Indiana controls in this case the

assignment of wages as security for the note is void. Appellees' contention is that the validity of the assignment is to be determined by the laws of Indiana under the rule that where a contract is made in one State to be performed in another, the law of the place of performance will control in determining its validity.

There is no proof in the record sustaining the averment that this contract is to be performed in Indiana. The record is silent as to where Beckett's salary or wages are to be paid. The assignment was dated and executed at Chicago, as was also the note, which is payable to the order of appellant at its offices in Chicago, Illinois, together with an attorney's fee of $25 if placed in the hands of an attorney for collection. The assignment authorizes appellant to take all legal or equitable measures for the complete recovery of the demand assigned and to receipt for any money which may become due. The road of the Chesapeake and Ohio Railway Company of Indiana runs into Chicago, and the duties of Beckett frequently called him across the line into Chicago as switchman or extra conductor on the road of his employer. The right of the assignee of the salary or wages of an employee to institute suit to reach such salary or wages is the same as that of the employee. It has been held that where wages were earned and payable in Kansas the employee might maintain his action therefor in Iowa, on the theory that all debts are payable everywhere unless there is some special limitation or provision in respect to payment, the rule being that debts have no *locus* or *situs* but accompany the creditor everywhere and a demand on the debtor is authorized everywhere. (*Chicago, Rock Island and Pacific Railway Co.* v. *Sturn,* 174 U. S. 710.) A creditor also has the right to garnishee another person in a State different from the State in which the parties were living, on the ground that the party bringing the suit is really in such proceeding a representative of the creditor of the garnishee, and therefore has the same right to

commence the suit to recover the debt in a foreign State that the original creditor had. (*Harris* v. *Balk,* 198 U. S. 215.) In *Hannibal and St. Joseph Railroad Co.* v. *Crane,* 102 Ill. 249, this court held that although a debt was owing in Missouri to an inhabitant in that State by a Missouri corporation and payable by that company in that State, an action to recover thereon may be maintained in the courts of this State. Beckett had a right to enforce his contract for wages in this State and so did appellant. Both could obtain service upon the debtor in Cook county, and the showing is rather that it was the intention of appellant to enforce the assignment in this State and not in Indiana, as it had the right and ability to do so. The contract in this case must be controlled and governed by the laws of this State and not by the laws of the State of Indiana.

There is no proof in the record that the future wages of an employee cannot be assigned in the State of Indiana. Under our laws an assignment of wages to be earned in the future under an existing employment, even though the employment is for an indefinite time, is not against public policy, and is valid if made for a valuable consideration and untainted with fraud. *Mallin* v. *Wenham,* 209 Ill. 252; *People* v. *Stokes,* 281 id. 159.

The contention of appellees that the order of the United State district court in the bankruptcy proceeding in which Beckett received his discharge and in which proceeding he scheduled a claim of appellant against him "for borrowed money, $71.40," bars appellant's suit, is not tenable. A discharge in bankruptcy does not render unenforceable a prior assignment of wages to be earned in the future, since the discharge in bankruptcy is only a personal release, which does not destroy such a lien created by the assignment. *Mallin* v. *Wenham, supra; Citizen's Loan Ass'n* v. *Boston and Maine Railroad Co.* (Mass.) 13 Ann. Cas. 365.

The Wage Loan Corporation act of 1913 (Hurd's Stat. 1916, p. 699,) is not invalid because it purports to amend

section 1 of the general Incorporation act by reference only to its title, as contended by appellant, in violation of section 13 of article 4 of the constitution, that no law shall be revived or amended by reference to its title, only, but the revived or amended section shall be inserted in the new act.. It is not invalid as special legislation, in violation of section 22 of article 4 of the constitution, and, in effect, an amendment of the general statute on interest. The contention of appellant that if the Wage Loan Corporation act is valid as a whole, section 6 thereof is invalid because it relates to a subject not embraced in the title, is also untenable. The act of 1913 is not an attempted amendment of the general Incorporation act or any section thereof. It is a complete act in itself. The fact that it provides the same method for the organization of such corporations as is provided for by the general Incorporation act does not make it an amendment of that act. The powers, privileges and liabilities of a corporation organized under the act of 1913 are measured and limited by the act itself and are to be determined without reference to any other act. It differs in this regard from the act considered by this court in *People* v. *Stevenson,* 272 Ill. 325, and is governed by the principles announced in *People* v. *Crossley,* 261 Ill. 78, *People* v. *Knopf,* 183 id. 410, and *People* v. *Wright,* 70 id. 388. The act, as a whole, is not invalid. The title of the act is, "An act to provide for the incorporation, management and regulation of wage loan corporations and to allow the loaning of money by such corporations secured by assignment of wages, and limiting the rate of compensation to be paid." The contention that section 6 is broader than the title and includes all notes and wage assignments, whether made to wage loan corporations or to banks, partnerships or individuals, cannot be sustained. A similar contention was passed upon in *Hogan* v. *Akin,* 181 Ill. 448, and *Sellers* v. *Thomas,* 185 id. 384, with reference to the validity of an act to regulate the assignment of notes secured by chattel

mortgages. Section 1 of that act is substantially in the same language as section 6 of the act now in question, the difference being that where "chattel mortgage" is used in the former, "wage assignments" is used in the latter. It was held that the Chattel Mortgage act was not subject to the objection that it embraced a subject not expressed in the title.

Appellant's charter was granted by the State of West Virginia in June, 1905. By its charter it is authorized to loan money and take mortgages on real estate and personal property. All of its incorporators and stockholders reside in the city of Chicago and its office in that city is its only place of business. In 1905 it was licensed by the Secretary of this State to exercise the rights and privileges in this State granted under the laws of this State to foreign corporations. In 1913 the act was passed authorizing the organization in this State of corporations with power to loan money to wage earners and to take assignments of wages as security therefor. The transaction involved in this record took place after that act went into effect. Appellant was then doing the same character of business a corporation organized under the act of 1913 was authorized to do. The evidence in the record indicates that appellant had been engaged extensively in loaning money to wage earners and taking assignments of wages as security therefor. It must be deemed, therefore, that it is doing the character of business under its license that a corporation organized under the act of 1913 is authorized to do, in the absence of any further showing, and that it is bound by the provisions of said act.

Appellant also contends that although the act of 1913, known as the Wage Loan Corporation act, be valid and applicable to the loan and assignment in this case, the assignment of wages in this case is not void by reason of the provisions of section 6, as that section only renders an assignment void when the note fails to recite upon its face

that it is secured by an assignment of wages after the note is assigned to another party by the payee. This contention appears to be sound and must be sustained. Section 6 of said act provides as follows: "All notes, the payment of which is secured by wage assignments, shall state upon their face that they are so secured, and when assigned by the payee therein named, shall be subject to all defenses, existing between the payee and the payor of said notes the same as if said notes were held by the payee therein named, and any wage assignment securing notes which do not state upon their face [to] the fact of such security shall be absolutely void." As has already been stated, this section is, in substance, identical with the first section of the Chattel Mortgage act. In *Hogan* v. *Akin, supra,* it was held that if a chattel mortgage secures a note which fails to state on its face that it is secured by a chattel mortgage, the mortgage is not void unless the note has been assigned. It was held in that case, also, that the purpose of having those words written upon the face of the note was to give notice that it was secured by a chattel mortgage and by the provisions of the Chattel Mortgage act the note was not negotiable,—*i. e.,* that it could not be transferred to another, even before maturity and without other notice of defenses, and give the assignee a right of action on the note without according to the maker all defenses to which it would have been subject in the hands of the original payee. As between appellant, the payee of the note in this case, and appellee Beckett, there is no need of the note reciting on its face that it is secured by a wage assignment to give such notice, as both of these parties have complete notice of the fact that the note is so secured, and the statute itself requiring such recital is complete notice that it is subject to all such defenses against the payee, and as the note, without such a statute, in the hands of the payee is subject to such defenses as long as the payee is the owner and holder of the same. The legislature evidently intended that this sec-

tion of the statute should have the same construction as was placed by this court upon section 1 of the Chattel Mortgage act. We therefore hold that section 6 was only intended to make the assignment of wages void after the note had been assigned. By that provision the assignee would only have the right of his action at law without any lien on the wages or salary of the maker to secure the note or the amount recovered thereon.

In the briefs of both parties they have confined the greater portion of their discussion to the legal questions passed upon by the master in his report. These questions did not involve the merits of the controversy whether there was fraud or a mutual mistake in stating in the assignment the name of Beckett's employer or whether the transaction was usurious. Both these defenses were relied upon in the answer to the bill and evidence was introduced on both said defenses. Upon the question of usury the testimony is so confused and incoherent that it is difficult to determine from the record itself, and utterly impossible from the abstract, just how much money Beckett paid for the use of the sums he borrowed. The best understanding we can get of it is that in all the transactions between him and appellant he received but $65 in money. He appears to have paid appellant $153.50, which includes $12.50 paid on the principal of the $71.50 note, being the last note given and upon which the bill alleges there is still due as principal $59. From the testimony he apparently paid interest at the rate of ten per cent per month for the amount of money he received. If this is correct the transactions were usurious and the entire indebtedness would be discharged by the payments made.

At the time of the first transaction between appellant and Beckett he was not employed by the Chesapeake and Ohio Railway Company of Indiana but was employed by the Indiana Harbor Belt Railroad Company. It was stipulated before the master that if a certain witness mentioned

was called he would testify Beckett was employed by the Chesapeake and Ohio Railway Company of Indiana prior to and on September 14, 1914. Beckett testified he was first employed by that company in February, 1914. While the assignment of wages bears date of September 14, 1914, Beckett testified he executed no note or assignment that day; that he was not in Chicago that day, where the office of appellant is and where all the papers were signed, but that he was at his home in Hammond, Indiana. He was able to fix the date by the fact that his wife gave birth to a child that day. Gertrude A. Hurley testified she was the president of the appellant company; that she knew Beckett well and that he had frequently been in appellant's office. She testified the $71.50 note and assignment of wages to secure it were executed by Beckett the day they bore date, September 14, 1914. She further testified that when that note was signed she delivered up to Beckett his previous notes and stamped them paid. Three notes were introduced in evidence and were stamped paid September 10, 1913. It was clearly proved that Beckett was not in Chicago on September 14, 1914, and that fact considered in connection with the testimony of the president of appellant that when the $71.50 note and assignment were given the old notes were stamped paid and delivered to Beckett, and the further fact that those notes were stamped paid September 10, 1913, warrant the conclusion that the assignment was not executed on the day it bears date and that it was not signed later than September 10, 1913. Beckett testified that when he secured the first loan, in December, 1912, he signed six papers having blanks not filled in. The three notes delivered up to Beckett when he gave the note for $71.50 are none of them dated, and the blanks for writing in the day, month or year after the dates when they were to become due are not filled in.

Upon consideration of the evidence we conclude appellant clearly failed to prove that at the time the assignment

was executed which it is sought to reform, Beckett was an employee of the Chesapeake and Ohio Railway Company of Indiana. The weight of the evidence supports the conclusion that the blanks in the note and assignment were not filled in at the time they were signed by Beckett but were filled in subsequently by appellant. The proof of appellant failed to sustain the allegations of the bill that by a mutual mistake a wrong name of Beckett's employer was written in the assignment or that there was any fraud on the part of Beckett in connection with it. To justify the reformation of the assignment on the ground of mistake of fact it was incumbent upon appellant to prove by clear and satisfactory evidence that the mistake was a mutual one. (*Purvines* v. *Harrison,* 151 Ill. 219; *Mills* v. *Lockwood,* 42 id. 111; *Shay* v. *Pettes,* 35 id. 360; *Coffing* v. *Taylor,* 16 id. 457.) The evidence on this question was not passed upon by the master and does not appear to have been passed upon by the chancellor but the bill was dismissed on other grounds. The evidence upon the question is in the record. We have held the master's report recommending dismissal of the bill upon the grounds of law stated in said report was erroneous. The master made no finding of facts or recommendation upon the question whether the proof sustains the allegations of the bill of mutual mistake or fraud. If we are right in our conclusions upon this question the decree was right even though it was based on other grounds. In *In re Estate of Grossman,* 175 Ill. 425, the court said: "What ground the circuit court may have predicated its decision upon is immaterial. The only question here is whether the judgment of the circuit court was correct or incorrect, regardless of the reasons that may have been given for that judgment." See, also, *State Bank of Clinton* v. *Barnett,* 250 Ill. 312; *Village of Oak Park* v. *Lane,* 275 id. 420.

The decree of the circuit court is affirmed.

*Decree affirmed.*