State Street Furniture Company, Appellee, v. Armour & Company, Appellant.

Gen. No. 34,217.

Heard in the second division of this court for the first district at the April term, 1930. Opinion filed January 27, 1931.

CHARLES J. FAULKNER, JR. and WALTER C. KIRK, for appellant.

KERN, STIEFEL & STIEFEL, for appellee; JACOB J. KERN and CHARLES W. STIEFEL, JR., of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In a fourth class action in contract the court on January 11, 1930, on plaintiff's motion, struck from the files defendant's affidavit of merits for the reason that in the court's opinion it did not set forth any legal defense to plaintiff's statement of claim. Thereupon, defendant refusing to plead further and electing to stand on its affidavit, the court defaulted defendant and entered a finding and judgment against it for $38, the full amount of plaintiff's claim as sworn to. The present appeal followed.

The action is brought under section 18, as amended, of the Practice Act (Cahill's St. 1929, ch. 110, ¶ 18, p. 2018), which section, by present rule 22 of the municipal court of Chicago, is made to apply to cases in that court. (*Hamill v. Watts*, 180 Ill. App. 279, 282), and is in part as follows:

"The assignee and equitable and *bona fide* owner of any chose in action not negotiable, heretofore, or here-

after assigned, may sue thereon in his own name, and he shall in his pleading on oath, or by his affidavit, where pleading is not required, allege that he is the actual *bona fide* owner thereof, and set forth how and when he acquired title; but in such suit there shall be allowed all just set-offs, discounts and defenses, not only against the plaintiff, but also against the assignor or assignors, before notice of such assignment shall be given to the defendant: *Provided,* that in all cases in which the chose in action sued upon shall have been (assigned for the purpose of securing the payment) of an indebtedness from the assignor to the assignee thereof, and in which the chose in action so assigned consists of *wages due or to become due* to the assignor thereof from the defendant in such action, at least five days written notice of the pendency of such suit shall be served upon the assignor of such chose in action, before the trial of the same; . . ."

As originally enacted in 1907, section 18 did not have any proviso. (Hurd's Stat. 1909, p. 1696.) The proviso first appeared by amendment of the section in 1915, and by a further amendment in 1925 the words above appearing in parenthesis were stricken out, and an additional clause, not here material, was added. (Cahill's St. 1929, ch. 110, ¶ 18, p. 2018.)

In plaintiff's statement of claim it is alleged that on February 2, 1929, Willie Stevens, then in defendant's employ, assigned and transferred to plaintiff all wages and claims for wages, earned and to be earned, up to and including the last day of February, 1932; that said assignment was made as security for an indebtedness from said Stevens to plaintiff and of which assignment plaintiff is the bona fide owner and holder; that on March 19, 1929, plaintiff served a written notice of said assignment and a demand for payment upon defendant, but said demand was refused; that on August 21, 1929, plaintiff made a further demand for payment upon defendant, which demand also was re-

fused; that said Stevens was in defendant's employ on March 19, 1929, and has since remained in its employ; and that plaintiff's damages amount to the sum of $38, etc.

In defendant's affidavit of merits it is alleged that Stevens is now and has been for a long time an employee of defendant and that prior to the date of the alleged assignment, as set forth in plaintiff's statement of claim, to wit, on July 9, 1928, Stevens entered into a written contract or stipulation with defendant, as follows:

"For and in consideration of my employment by Armour and Company, or any of its subsidiaries, I do hereby covenant and agree, as a part of my contract of employment, that I will not sell, transfer, set over or assign in any manner to any person or persons, copartnership or corporation, any right to or claim for wages or salary, in whole or in part, due me or to become due me from Armour and Company, or any of its subsidiaries, under said contract of employment, without the consent in writing of Armour and Company; that any right or claim I now have or may have to salary or wages, as aforesaid, shall not be assignable without the written consent of Armour and Company; and that any attempted sale, transfer or assignment without such written consent shall be null and void."

And defendant further alleged in substance that thereafter, to wit, on September 15, 1928, defendant "gave written notice" to plaintiff that, "because of having made such contracts with all of its employees," it would "no longer honor assignments of wages" made by any employee; that the alleged assignment of wages made by Stevens was taken and received by plaintiff after Stevens had contracted with defendant as aforesaid and after plaintiff had received notice thereof; that on March 20, 1929, defendant received a

notice from plaintiff to the effect that plaintiff held an assignment of the wages of Stevens, but defendant says that all wages earned by Stevens prior to and including the date of the alleged assignment was demanded from defendant by Stevens and paid to him before defendant had any notice of the alleged assignment; that, however, after defendant received notice of said assignment, Stevens continued in its employ and "thereafter earned wages *in excess of the amount for which plaintiff sues,* all of which wages have been demanded by Stevens and have been paid to him by defendant"; that defendant "never consented to said Stevens assigning his wages to plaintiff"; that the assignment sued upon by plaintiff "was executed by Stevens contrary to the contract between him and defendant"; that, because of said contract, Stevens' said assignment to plaintiff "is null and void," and plaintiff "is not the equitable and bona fide owner of any money earned by Stevens after notice to defendant of said alleged assignment"; and that defendant is not liable to plaintiff in any sum.

Courts of law, as well as courts of equity, long ago recognized the right to assign an *entire* chose in action. In 1 Williston on Contracts, Ed. 1920, sec. 410, p. 758, the author says: "Equity also held that the assignee would be protected in his right as against an assignee in a subsequent bankruptcy of the assignor; and at the end of the eighteenth century the same decision was made by a court of law, which held that it would take notice of the doctrines of equity in regard to assignments and apply them. (Citing *Winch v. Keeley,* 1 T. R. 619.) At the present time so fully have courts of law adopted the principle that assignment of choses in action will be protected, that where an absolute and total assignment of a chose in action is made, application to a court of chancery is not often necessary; . . ." In *Chapman v. Shattuck,* 3 Gilm. 49, 52,

decided in 1846, it is said: "The doctrine is now well settled that courts of law will recognize and protect the rights of the assignee of a chose in action, whether the assignment be good at law, or in equity only. If valid in equity only, the assignee is permitted to sue in the name of the person having the legal interest, and to control the proceedings. . . . After the debtor has knowledge of the assignment, he is inhibited from doing any act which may prejudice the rights of the assignee. Payment by him to the nominal creditor, after notice of the assignment, will be no defense to an action brought for the benefit of the assignee. Any compromise or adjustment of the cause of action by the original parties, made after notice of the assignment, and without the consent of the assignee, will be void as against him. . . . A *partial* assignment, however, of the chose in action, will not suffice to bring the case within the principle. The *whole* cause of action must be assigned." (See, also, *Morris v. Cheney*, 51 Ill. 451, 454.) When section 18 of our Practice Act as originally enacted was in force the Appellate Court for this district in *Ensign v. Illinois Cent. R. Co.*, 180 Ill. App. 382, 388, an action at law, said: "While section 18 of our Practice Act allowed plaintiff in error (Ensign) to sue in his own name on the bills of lading on compliance with the terms of that section; yet, the statute simply declares the principles of the common law that are applicable to suits by assignees on non-negotiable instruments, and it changes the common law in no particular, except that at common law the suit on such an instrument by an assignee had to be brought in the name of the assignor." In *Ginsberg v. Bull Dog Auto Fire Ins. Ass'n*, 328 Ill. 571 (reversing the judgment of the Appellate Court in 237 Ill. App. 656) it is decided in substance that where one is insured against loss by theft of an automobile and a loss occurs and *after the loss* he assigns his claim under the policy to a third party, such third party, by virtue of section 18 of the

Practice Act, can maintain an action in his own name against the association and recover for the loss, notwithstanding it was provided in the policy that "no assignment of interest under this policy shall be or become binding upon the association unless the written consent of the attorney is endorsed thereon and an additional membership fee is paid." It appears from the opinion of the Supreme Court that "the entire defense was based upon the failure to comply with the terms of the policy above quoted with reference to the assignment," and the court said in part (pp. 572–3–5):

"There is a distinction between the assignment of a policy of insurance before loss and the assignment of a claim for loss after the loss has occurred. In the case of an executory contract, whether it be a policy of insurance or any other contract, the rule is well settled that the contract generally is not assignable without the consent of both parties thereto, where the personal acts and qualities of one of the parties form a material and ingredient part of the contract. (Citing authorities.) . . .

"After the contract has been fully executed and nothing remains to be done except to pay the money a different rule applies. . . . The claim becomes a chose in action, which is assignable and enforcible under section 18 of the Practice Act. In *Sloan v. Williams,* 138 Ill. 43, on page 46, it is said: 'It is true, that after the contract has been executed by the person agreeing to perform such personal services or exercise such personal skill, he may assign the right to recover compensation.' (Citing other authorities.) . . .

"When the automobile was stolen and defendant refused to pay, a cause of action arose in favor of the insured. It became a chose in action and the policy became the evidence of the debt. The insured had the right to assign this debt, and when he did so, plaintiff in error had a right to begin this suit."

And it is the well settled law in Illinois that "an assignment of wages *to be earned in the future* under an *existing* employment, even though the employment is for an indefinite time, is not against public policy, and is valid if made for a valuable consideration and untainted with fraud." (*Monarch Discount Co. v. Chesapeake and Ohio Ry. Co.*, 285 Ill. 233, 239; *Mallin v. Wenham*, 209 Ill. 252, 254.) In the *Monarch Co.* case it is said (p. 238): "The right of the assignee of the salary or wages of an employee to institute suit to reach such salary or wages is the same as that of the employee." In the *Mallin* case, in discussing the question whether an assignment of wages earned or to be earned is against public policy, it is said (p. 256): "The citizens of the State have a right to contract, and there is no law forbidding one from selling or assigning any property he may have. A person has the same right to assign his wages that he has to mortgage his homestead or to mortgage personal property that is exempt from execution." And it is further said (p. 258):

"We cannot see that there is anything intrinsically vicious in an assignment of wages. The assignor, in such case, simply draws upon his future prospects to supply present needs, which may be of the most urgent and pressing character. There is no law in this State to prevent a poor person from mortgaging or pledging any or every article of property he possesses, as security for his debts, and such a privilege may be of great value. On the whole, we see no reason or right for holding the assignment in question here void as against public policy."

It is contended by defendant's counsel in the present case that the court erred in striking defendant's affidavit of merits from the files and in entering the judgment appealed from. In the municipal court a motion to strike such a pleading has the effect of a demurrer

thereto (*Harmon v. Callahan,* 286 Ill. 59, 61); and, as it appears from the court's order that said affidavit was stricken on the ground that it did not set forth a legal defense to plaintiff's statement of claim, the action of the court is here preserved for review without any bill of exceptions. (*Citizens Securities & Investment Co. v. Olson & Co.,* 234 Ill. App. 552, 555.) The main question on this record, therefore, is whether, admitting all the well pleaded facts as alleged in the affidavit to be true, said affidavit states a legal defense to plaintiff's claim. Those well pleaded facts are, in substance, that prior to July 9, 1928, Stevens (plaintiff's assignor) was, and still is, an employee of defendant; that on July 9, 1928, Stevens entered into a written contract with defendant, wherein he agreed, in consideration of his employment, that he would not thereafter transfer or assign to anyone any claim for wages, due or to become due to him, without defendant's written consent, and that any such attempted transfer or assignment without such consent should be null and void; that about two months after the making of said contract, to wit, on September 15, 1928, defendant notified plaintiff in writing that, "because of having made such contracts with all of its employees," it would "no longer honor assignments of wages" by any of its employees; that the assignment of wages sued upon (given by Stevens to plaintiff on February 2, 1929) was made by Stevens and received by plaintiff *after* the date of Stevens' said contract with defendant and after plaintiff had received said notice of September 15, 1928; that defendant never consented to Stevens assigning his wages to plaintiff; that on March 20, 1929, defendant received notice from plaintiff that plaintiff held an assignment of wages given by Stevens; and that thereafter Stevens remained in defendant's employ and earned and was paid by defendant on his demand wages "in excess of the amount

for which plaintiff sues.'' It will be noticed that it is not alleged that plaintiff was a party to the contract of July 9, 1928, or that plaintiff ever was given notice that Stevens had entered into the particular contract with defendant. The allegation is, in substance, that, before the assignment of wages sued upon was given by Stevens, plaintiff received written notice that defendant would ''no longer honor assignments of wages,'' or, in other words, that it would no longer *consent* to any such assignments being given by any of its employees. In view of the provisions of section 18 of the Practice Act, Cahill's St. ch. 110, ¶ 18, and of the legal principles, holdings and decisions above mentioned, and of the other authorities hereinafter referred to, we are of the opinion that defendant's affidavit of merits did not state a legal defense to plaintiff's claim and that, defendant electing to stand by its affidavit, the court was warranted in entering the judgment appealed from.

In 2 Ruling Case Law, sec. 31, page 624, it is stated: ''Where the assignment is of the entire claim, the consent of the debtor is not required. If the rule were otherwise it would be a practical denial of the assignability of choses in action, because the right to assign would depend entirely on the will of the debtor.'' In 1 Williston on Contracts, sec. 422, p. 790, the author says: ''But a provision in a contract of service that an assignment of wages would subject an employee to immediate dismissal does not make an assignment ineffectual'' (citing *Wabash R. Co. v. Smith,* 134 Ill. App. 574, 578.) In *Bank of United States v. Public Bank of New York City,* 151 N. Y. S. 26, 28, it is decided that although the rule of a bank requires a depositor to appear in person to withdraw his account, the relation of debtor and creditor still exists, and that where the depositor assigns his bank account, such rule will not justify the bank's refusal to pay to the de-

positor's assignee. In *Eaves v. Chicago, B. & O. R. Co.,* 200 Ill. App. 380, it is decided in effect that a rule of a relief department of a railroad company, that an assignment of a claim of a member of the department cannot be made without the approval of the department's superintendent, is not a bar to an action based upon an assignment of the member's *entire* claim. In *Stern v. Gelder,* 224 Ill. App. 89, 92, it is said: "Although a contract may be such that it is not assignable, nevertheless, money which has become due under it may be assigned." In *In Re Wright,* 157 Fed. 544, 546, it is said: "There is a difference between an absolute assignment of a contract and an assignment of rights under a contract. The personal confidence which precludes the transfer of rights arising out of a contract must be involved in the nature of the rights themselves. . . . It is not ordinarily involved in the right to receive moneys due or to grow due under a contract, and this right is generally assignable without the consent of the other party" (citing *Fortunato v. Patten,* 147 N. Y. 277, 282.)

One of the contentions of counsel for plaintiff is that the contract between Stevens and defendant, as set forth in defendant's affidavit of merits, should be considered void as being against public policy. As to plaintiff, even with such notice as it is alleged he received, we think that there is substantial merit in the contention. In *Massie v. Cessna,* 239 Ill. 352, 358, it is said that "the right to labor for and to render services to another, and the right to dispose of the compensation to be received for so doing, are property rights" within the meaning of section 2 of article 2 of the constitution of Illinois. The agreement in question is an attempt to restrict Stevens' right to alienate his property and to assign a chose in action. We think that the policy of the law is opposed to such restrictions. (Section 18, Practice Act, Cahill's St. ch. 110, ¶ 18;

(Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, 328 Ill. 571, 573; *Monarch Discount Co. v. Chesapeake and Ohio Ry. Co.,* 285 Ill. 233, 239; *Spare v. Home Mutual Ins. Co.,* 17 Fed. 568, 571; *John D. Park & Sons Co. v. Hartman,* 153 Fed. 24, 39.)

Our conclusion is that the judgment appealed from should be affirmed and it is so ordered.

*Affirmed.*

SCANLAN, P. J., and KERNER, J., concur.